Elbert Lee WILLARD and Wilma Ellouise Willard, Petitioners-Respondents,

v.

Brenda Willard DOYLE, Appellant.

No. 11816.

Missouri Court of Appeals, Southern District, Division One.

Feb. 23, 1981.

Richard D. Moore, Moore & Brill, P. C., West Plains, for petitioners-respondents.

Esco V. Kell, West Plains, for appellant.

TITUS, Judge.

Petitioners Elbert and Wilma Willard, husband and wife, jointly sought adoption, inter alia, of four minor children. Elbert and Brenda Willard Doyle, formerly husband and wife, are the natural parents of three of the children. Brenda is the natural mother of the fourth child which she and Elbert adopted following their marriage. Brenda answered opposing the adoption and affirmatively prayed for modification of the decree which divorced Elbert from her so that she should be allotted specific times each month to visit with her four children. The procedures prescribed by Ch. 453, RSMo 1978, were faithfully followed by the trial court and are not questioned upon appeal. After due hearing, the court nisi decreed the four children to be legally adopted by petitioners and denied Brenda's entreaties for modification of the divorce decree. Brenda appealed.

Brenda's three points relied on read: "I. The court erred in terminating the parental rights of Brenda Willard Doyle, natural mother of her four minor children on the grounds that the natural mother had willfully abandoned and or willfully neglected said children for a period of a year before the filing of petition for adoption, because said decree terminating the parental rights and decreeing adoption of said minors was not supported by the evidence, particularly by clear, cogent and convincing evidence as required by the statute. II. The court erred in refusing and failing to modify original decree to award and order specific visitation rights to Brenda Willard Doyle, natural mother of said minor children. III. In review of this non-jury case, it is the duty of the appellate court to make its own finding of facts and conclusion of law."

We are initially confronted with the motion of Elbert and Wilma to dismiss Brenda's points relied on II and III for failure to comply with the requirements of Rule 84.-04(d). The requirements of this rule are mandatory and applicable to court-tried cases. *Simpson v. Island View Sales Corp.,* 540 S.W.2d 624, 625[1] (Mo.App.1976). The motion is well taken and rightfully should be extended to include point relied on I. As to point I, merely stating that the decree "was not supported by the evidence, particularly by clear, cogent and convincing evidence", is violative of the rule because the point does not undertake to illustrate "wherein and why" the decree was not supported by the evidence. *Carolyn v. Stahl,* 601 S.W.2d 636–637[1] (Mo.App.1980); *International Harvester Credit Corporation v. Formento,* 593 S.W.2d 576, 578[1] (Mo.App. 1979). Point II merely asserts the trial court erred in failing to modify the original divorce decree but nowhere does it attempt to enlighten as to why such failure was error. *Dowlin v. Western Cas. & Sur. Co.,* 592 S.W.2d 486, 487[2] (Mo.App.1979); *Snow v. Fikes,* 570 S.W.2d 815, 816[2] (Mo. App.1978). Claiming, as done in point III, that we should make our own finding of facts and conclusions of law, suggests no erroneous act, ruling or order by the trial court. At most, this point is an abstract statement of law which does not attempt to relate itself to the trial court's actions and, therefore, preserves nothing for appellate review. *Egan v. St. Louis-S. F. Ry. Co.,* 581 S.W.2d 939, 940[1] (Mo.App.1979). Nevertheless, because of the nature of the matter involved, we are constrained to abstain from dismissing the appeal for failure to comply with Rule 84.04(d) and, reluctantly, overrule the motion of Elbert and Wilma, as augmented by our own observations, to do so. *Wykle v. Colombo,* 457 S.W.2d 695, 698[1] (Mo.1970).

Elbert Willard, an over-the-road truck driver for 15 years before the date of the May 1980 trial herein and whose age was not revealed, married Brenda Willard Doyle on a date undisclosed by the record. However, the oldest of the three children resulting from that union was born October 20, 1969. As previously mentioned, after Elbert and Brenda were married they adopted a child born to Brenda by a previous marriage. During this coverture, Elbert and Brenda lived in or near West Plains. For

reasons not revealed, Elbert and Brenda separated December 31, 1974, and were divorced February 21, 1975. Elbert was awarded custody of the four children and Brenda was given "reasonable visitation privileges and . . . the right to have temporary visitation for an extended and continuous period not to exceed two (2) weeks during her vacation," whatever that may mean. Shortly after separating from Brenda, Elbert met Edna Roberts who cared for the four children in Elbert's home. Edna and Elbert were married in the summer of 1975 and were divorced in December of the same year. Elbert married Wilma, his present wife and a joint petitioner herein, September 9, 1977. Wilma had two children by Carl Collins whom she divorced in May 1970. She and Elbert undertook to also adopt these children in the instant proceeding. However, one of Wilma's children died before the decree of adoption was entered.

After her separation from Elbert in December 1974 and before the February 1975 divorce, Brenda (30 years old at the time of the May 1980 trial herein) left West Plains and moved to Illinois and then Louisiana leaving the four children in Elbert's care. In the latter part of February 1975, Bill Henry went "down to Louisiana and got" Brenda. Together Brenda and Bill returned to West Plains where they resided together for about a year. After that, Brenda and Bill lived in Kansas City for another year until they "broke up" in February 1978. Brenda then moved to Ft. Smith, Arkansas, where she has resided ever since. A week or two after moving to Arkansas, Brenda met a Mr. Doyle. Two months thereafter Brenda and Doyle began living together but they "didn't get married until after" their baby was born or "about a year" after the cohabitation commenced.

Because of the extended period involved id est, December 1974 to May 1980, the memories of the various witnesses, unsurprisingly enough, tended to be fuzzy and sometimes inconsistent when recounting details and dates. Elbert recalled that between December 1974 and until Edna moved in to care for the children in early 1975, and again after his separation from Edna in late 1975 until he married Wilma in September 1977, the children were mostly being cared for by babysitters in their homes. This was necessary because Elbert, an over-the-road truck driver, was home and off work only about a day and a half following an absence of approximately six days. Shortly after divorcing Brenda, Elbert said he tried "several times" to get Brenda "to come stay with the children at the home," including "one time when the kids were sick," but that she refused the invitations. Elbert recounted that Brenda, the children's mother, visited the children once or twice after their initial separation, but that Brenda had not again seen the children until near Christmas 1976 and that he received only one letter from Brenda during that year. It was Elbert's recollection that Brenda did not see the children in 1977 and 1978, and had not seen them since except for one time after the present action was filed when she saw them at school.

Wilma, Elbert's present wife and joint petitioner, testified she had been contacted but twice by Brenda to see the children and that Brenda was then advised it would be necessary for her to arrange this with Elbert which was never done. The witness said that Brenda had not seen the children since Elbert and Wilma were married in September 1977, except for one time "when we had the other trial," and that the children "said they did not want her, they didn't even know her."

Brenda's sister stated that since February 1978, when Brenda moved to Arkansas, Brenda had not been to West Plains, except to attend trials,[1] and that, to her knowledge, Brenda had not seen the children dur-

---

1. The evidence suggested that Brenda had attended trials relating to matters unrelated to the adoption proceedings.

ing that period but for a short visit with them at school as already noted. Brenda, while testifying, recollected that when she and Bill Henry were living together in West Plains for about a year following February 1975, she had seen the children about a dozen times. However, and although she had come to West Plains about once a month while she was living with Bill Henry in Kansas City from 1977 to 1978, she never saw the children and had not seen them subsequent to moving to Arkansas in early 1978 except for a half-hour visit at a West Plains school while attending a proceeding attending the present litigation.

■ In determining this appeal we must remember that as the trier of the fact, the trial court had leave to believe or disbelieve all, part or none of the testimony of any witness [*Cave v. Cave*, 593 S.W.2d 592, 595[5] (Mo.App.1979)] and that its determination is to be sustained unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ Our statute, § 453.040(4), RSMo 1978, provides: "The consent of the adoption of a child is not required of . . . (4) A parent who has for a period of at least one year immediately prior to the filing of the petition for adoption, either willfully abandoned the child or willfully neglected to provide him with proper care and maintenance." As used in the law, "willfully abandoned" means an intentional and voluntary relinquishment of the child's custody to another to never again claim the rights of a parent nor to perform the duties of a parent, coupled with an intentional withholding by the parent from the child, without just excuse or cause, his presence, care, love, protection, maintenance and display of filial affection. The term "willfully neglected" is construed to be deliberate and intentional neglect, without excuse or cause, which evidences a settled purpose to

forego parental duties. To constitute willful neglect or abandonment under the statute, the parent's conduct must have occurred during the year immediately before the adoption petition was filed, albeit conduct of the parent before and after the statutory period may also be considered to determine the parent's intent and purpose. *D_____ G_____ K_____ v. D_____ G_____ K_____*, 545 S.W.2d 81, 82–83[3–5] (Mo.App.1976). To be additionally remembered, as particularly applies to this case, is that Brenda's excuse for apparently having abandoned and neglected the children because of her financial difficulties and residence away from the children, will not necessarily negate an intention to abandon or neglect the children within the context of the adoption proceedings. *Young v. Young*, 588 S.W.2d 207, 210[5] (Mo.App.1979).

■ In brief, the trial court could have correctly bottomed its action upon the following. When Elbert and Brenda separated in December 1974, Elbert, with Brenda's apparent assent, assumed custody and care of the children and has had those responsibilities ever since. Although the February 1975 divorce decree reserved unto Brenda reasonable visitation rights with the children plus continuous two weeks' visitation rights during her vacation periods, Brenda's contacts with the children were very minimal during the first year following the divorce and were practically nonexistent thereafter. At no time did Brenda undertake to exercise her two weeks of visitation rights. Although Brenda said she visited in West Plains about once a month while living in Kansas City from 1977 to 1978, she did not then see the children and did not visit with them after moving to Arkansas in early 1978 except for a one-time half-hour visit at a West Plains school in the fall of 1979 after the instant action was commenced. There was no indication that Brenda's avowed seldom but denied telephone entreaties to see the children were pursued with concrete or purposeful efforts. Brenda's excuse for not seeing the children while she was living in Kansas City and in

not seeking, at any time, to enforce the visitation rights afforded by the divorce decree, was that she was not working and, therefore, had no funds to expend on visits or lawyers. But this hardly comports with her monthly visits to West Plains from Kansas City and the fact she was quick to acquire counsel in the adoption action. Also, after moving to Arkansas and except for a brief time out to have her baby sired by Doyle, Brenda was gainfully employed and apparently had funds to employ a lawyer and to attend to legal business in West Plains which was not related to the adoption litigation.

Ignoring the conflict in the testimony regarding how many times Brenda saw or sought to see the children in the first few months after the divorce, her efforts in this regard were virtually nonexistent for two years after early 1977 and before the adoption petition was filed. Obviously, the trial court did not credit Brenda's feeble and extremely sporadic efforts to see her children after moving to Kansas City with sufficient importance to overcome the many months thereafter, representing more than a year before the petition was filed, during which the children were almost wholly ignored and neglected by Brenda. *Young v. Young*, supra, 588 S.W.2d at 210[4]; *In re Adoption of S.*, 581 S.W.2d 113, 117[4] (Mo. App.1979); *R. F. N. v. G. R.*, 546 S.W.2d 510, 512 (Mo.App.1976). Under the facts peculiar to this case, the court did not err in concluding and holding that Brenda had willfully abandoned and willfully neglected the children for the required statutory period of one year. In view of the rulings on the action for adoption, Brenda's efforts to amend the previous divorce decree regarding her custody and visitation rights with the children are now moot. The decree of adoption, herein affirmed, had the effect of terminating all of Brenda's parental rights, including those relating to custody and visitation. *Willmott v. Decker*, 56 Haw. 462, 541 P.2d 13, 15[4] (1975); 2 C.J.S. Adoption of Persons § 139, pp. 570–572.

Judgment affirmed.

GREENE, P. J., and FLANIGAN, J., concur.