In re Matter of C.W., a minor.

**S.G.W. and A.M.W.,
Petitioners–Respondents,**

v.

**R.B. f/k/a R.W., Respondent–Appellant.**

No. 53775.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 14, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 1988.

Eric Otto Stuhler, Michael T. Londoff, Leslie Ann Broome, St. Charles, for petitioners-respondents.

Craig A. Sullivan, Clayton, for respondent-appellant.

SIMON, Presiding Judge.

Appellant, R.B. f/k/a R.W., natural mother of C.W., appeals from a Decree of Adoption entered in the Circuit Court of St. Charles County terminating all rights and duties between her and her minor child, C.W. Petitioners, S.G.W., the natural father of C.W. and former husband of R.B., and his present wife, A.M.W., initiated the adoption proceedings, alleging that the natural mother, R.B., had willfully abandoned C.W. and willfully neglected to provide C.W. with proper care and maintenance for a period of at least six months immediately prior to the filing of the petition. S.G.W. consented to their adoption.

On appeal, appellant contends that the trial court: (1) lacked subject matter jurisdiction to grant the adoption because she did not consent to the adoption and the trial court failed to find any of the exceptions set forth in § 453.040 RSMo (1986) (all further references to RSMo (1986) unless otherwise noted); and, (2) erred in issuing the decree of adoption because the evidence was insufficient to establish the statutory exception contained in § 453.040(5) as to the requirement of parental consent because: (a) petitioners failed to prove by clear, cogent and convincing evidence that appellant willfully abandoned C.W. because there was no evidence of an intent to abandon, since the separation was involuntary and with just cause and excuse and the appellant repented the separation during

the statutory period; and, (b) petitioners failed to prove by clear, cogent and convincing evidence that appellant willfully, substantially and continuously neglected to provide her child with necessary care and protection because the evidence established that C.W. was not in need of care and protection and failed to establish that appellant had access to C.W. We affirm.

■ Reviewing the sufficiency of the evidence, we view the evidence and its reasonable inferences in the light most favorable to the trial court's findings. *In re B.G.S.*, 636 S.W.2d 146, 148[2, 3] (Mo.App. 1982). The pertinent facts follow. Appellant, R.B., the natural mother, and petitioner, S.G.W., the natural father, were married in 1977. R.B. and S.G.W. resided in Pennsylvania during their marriage. C.W., their only child, was born on August 19, 1979. R.B. had a daughter, R.L., now nineteen years old, born out-of-wedlock.

In February, 1980, R.B. took C.W., then nine and one-half months old, and R.L. to Greenville, Ohio to visit her ailing mother. After three months, R.B. informed S.G.W. that she was not returning to Pennsylvania.

A neighbor of R.B.'s in Ohio during this three month period testified that the children were left alone overnight on at least three occasions. She also testified to calling Children's Services, who came and took the children away overnight, after observing no sustenance for C.W., dirty diapers, and sour bottles in R.B.'s camper.

On June 6, 1980, R.B. allowed S.G.W. to take C.W. back to Pennsylvania for a short visit. Upon returning to Pennsylvania, C.W. was hospitalized for pneumonia. R.B. did contact S.G.W., but did not inquire about C.W. Subsequently, on June 15, 1980, S.G.W. filed his petition for dissolution and custody of C.W. in the Court of Common Pleas of Allegheny County, Pennsylvania.

R.B. testified that she called often during this period, but that S.G.W. hung up on her. She also testified that during the summer of 1980, she was hospitalized in June, had surgery in July, and was on public assistance.

On July 8, 1980, the Pennsylvania court held a hearing and granted primary custody of C.W. to S.G.W. R.B. was not present. The Pennsylvania court issued its decree of dissolution on September 8, 1980, granting legal custody of C.W. to S.G.W. The decree was silent as to any custody and/or visitation rights of R.B., but provided that she could petition for review of the decree at any time. R.B. did not seek review of the decree.

During the second week of September, 1980, S.G.W.'s mother took C.W. to their home in St. Charles, Missouri. S.G.W. continued to live at the marital home in Pennsylvania, going to school and working full-time until August of 1981. Testimony was elicited that S.G.W.'s home, work, and school telephone numbers were all available to R.B. during this period.

In August, 1981, S.G.W. changed employers and moved to St. Charles, Missouri to be with C.W. He testified that his prior employer in Pennsylvania was made aware of the location of his move. S.G.W., along with C.W., continued to live at his parents' residence for a year, during which time R.B. did not send any cards, gifts, or make any telephone calls. He did not maintain a separate telephone listing, but R.B. was aware of his address and telephone number since his parents had lived in the same house for twenty years, including during R.B.'s and S.G.W.'s marriage.

In August, 1982, S.G.W. moved to a residence in St. Charles, Missouri. He maintained a listed telephone number for the period that he lived there. He married his present wife, A.M.W., in June, 1984, and thereafter moved to his present home nearby, keeping the same telephone number.

S.G.W. testified that except for a telephone call in 1982, and one in 1984, R.B. did not contact either him or his parents, nor at any time did she send a card or gift to C.W.

R.B. testified that she was unable to send cards or gifts, or to contact C.W. in

any way, because she was unaware of C.W.'s whereabouts. R.B. claimed that she made approximately twenty telephone calls from June, 1980, to June, 1986, to both S.G.W. and his parents in St. Charles. She did admit that ten of the calls occurred in the first six months after S.G.W. had custody of the child. She also claimed that several calls were made to S.G.W.'s former employer and neighbors attempting to locate him without success. The remaining calls were made to his mother in St. Charles. R.B. testified that in June, 1986, she resorted to a ruse to discover C.W.'s whereabouts. R.B.'s present husband, L.B., called S.G.W.'s mother claiming to be a former friend and fellow employee of S.G.W. He asked for S.G.W.'s address so that he could contact him. After receiving the information, R.B. placed two telephone calls to S.G.W.'s mother and one to S.G.W. attempting to reestablish contact with C.W. His mother testified that those calls were made in July, 1986, after the filing of the petition of adoption.

R.B. also testified that, due to a lack of money, she never contacted the Prosecuting Attorney's office, the District Attorney's office, Coalition for Missing Children, or the police department about locating C.W. She further testified that she made no effort to have the custody order reviewed, even though she was aware that she could do so. She admitted that after marrying L.B. in June, 1984, she had money available to contact an attorney about C.W. R.B. has continued to reside in Greenville, Ohio since the divorce and her remarriage.

On July 15, 1986, S.G.W. and A.M.W. filed a petition for adoption of C.W. S.G. W. consented, but R.B. did not consent to the adoption. In its findings of fact the trial court began as follows: "Petitioner [S.G.W.] testified" and then tracked S.G. W.'s testimony and included:

> that respondent [R.B.] had willfully abandoned the minor child [C.W.] and willfully neglected to provided [sic] for the minor child with proper care and mainte-

nance for a period of at least six (6) months immediately prior to the filing of said Petition for Adoption, and more particularly, had provided no support, nor did [R.B.] see or communicate with said minor since the date of dissolution of marriage, the same being September 8, 1980;

Also, tracking testimony of another witness and certain testimony of R.B. and S.G.W., the court concluded that the adoption of C.W. should be granted to S.G.W. and A.M.W. and that all rights and duties of R.B. should cease and desist in relation to C.W.

Initially, R.B. argues that the trial court lacked subject matter jurisdiction to grant the adoption because the court failed to find any of the exceptions to parental consent set out in § 453.040.

Her claim is based on the trial court's Conclusion of Law in the Adoption Decree, which states:

> ... The Court having considered all of the factors contained in Chapter 453 of the Revised Statutes of the State of Missouri, determines that it is in the best interest and welfare of the minor child ... be adopted to Petitioner [S.G.W.] and Co–Petitioner [A.M.W.] and that all legal relationships, and all rights and duties between said minor child and the natural parent, the Respondent [R.B.], shall cease and desist; ....

R.B. contends that an order terminating parental rights must recite the jurisdictional facts and must set out a specific factual finding of an exception to parental consent, before a finding can be made based on a determination of the best interests of the child.

 Adoption proceedings in Missouri are governed by statute, *In the Matter of D.G.K. v. D.G.K.*, 545 S.W.2d 81, 82[1] (Mo. App.1976), and pursuant to § 453.030, the written consent of both parents is required to proceed with the adoption of a minor. However, pursuant to § 453.040, consent is not required if one of five exceptions ap-

plies. The exception relevant to the present proceeding is § 453.040(5):

> The consent of the adoption of a child is not required of ... (5) A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection.

Consent or waiver of consent is jurisdictional, and the trial court must first determine that willful abandonment or willful neglect has occurred before turning to the issue of the child's best interest. *In re Adoption of R.A.B.*, 562 S.W.2d 356, 357[1–4] (Mo. banc 1978). While the court must find willful abandonment or willful neglect to have jurisdiction, § 453.080 does not require the adoption decree to recite a specific finding of willful abandonment or willful neglect. Section 453.080 requires:

> If the court, after due hearing, is satisfied that the allegations of the petition are true, that the person sought to be adopted, if a minor, has been in the lawful and actual custody of the petitioner or petitioners for a period of at least nine months prior to the entry of the adoption decree, and that it is fit and proper that such adoption should be made, *a decree shall be entered setting forth the facts* and ordering that from the date of the decree the person sought to be adopted shall, to all legal intents and purposes, be the child of the petitioner or petitioners.

(Emphasis ours.)

R.B. relies on *In re W.F.J.*, 648 S.W.2d 210 (Mo.App.1983), to support her contention that a specific finding of an exception under § 453.040 is necessary for jurisdiction. *W.F.J.* is not authority for this point because it concerns termination of parental rights under § 211.447, not adoption under § 453.040. Section 211.447 is substantially similar to § 453.040 because the statutory grounds for termination without parental consent include abandonment and neglect. Because of this similarity between sections, adoption courts have used the definition of "abandonment" and "neglect" provided for in § 211.447 in establishing an exception to parental consent under § 453.040. On the other hand, a termination order under § 211.477 requires specific findings in contrast to § 453.080. Section 211.477 states that an order of termination can be issued when: "The court *finds that one or more of the conditions set out in section 211.447 exist* and the termination of the parental rights of the parent in and to the child is in the best interests of the child ..." (Emphasis ours.)

Thus, while the authority relied on by R.B. includes a statute which is similar to § 453.080, it has differing requirements for findings and does not control the point.

In *Webb v. First National Bank & Trust Co. of Joplin*, 602 S.W.2d 780, 786[7] (Mo.App.1980), the court, in a declaratory judgment action, found a previous adoption decree to be valid and not void for want of jurisdiction. The plaintiff argued that the decree was a nullity because it did not specifically recite that the adoptive parents had actual custody for nine months prior to the petition. The court answered this claim by stating:

> We are unwilling at this point to hold the decree void because the trial court did not explicitly find and recite satisfaction of the 9–month custodial period in the judgment. We are not concerned with the form of the judgment; as we have explained, we are concerned with the power of the trial court to enter the decree when it did.

*Id.* at 786[7]. *See e.g., Smith v. Benson*, 542 S.W.2d 571, 575[4] (Mo.App.1976) ("necessary findings of fact" not required under predecessor of § 453.080), *see also Conley v. Walden*, 166 Mont. 369, 533 P.2d 955, 958[3] (Mont.1975).

Therefore, we conclude that § 453.080 does not require a recital of specific findings of an exception to parental consent.

Additionally, we note that the record reveals no request by R.B. for specific findings. Such findings and conclusions are not required of the trial court unless requested. *Skinner v. Henderson,* 556 S.W.2d 730, 731[1] (Mo.App.1977). Since specific findings were not requested, all fact issues are to be found in accordance with the result reached by the trial court. *Marriage of Badalamenti,* 566 S.W.2d 229, 235[2] (Mo.App.1978), *see Watkins v. Johnson,* 606 S.W.2d 493 (Mo.App. 1980).

Finally, it is clear that the adoption decree in the instant case meets the requirements of § 453.080. The court recites the testimony of S.G.W., the petitioner, and other witnesses in its findings. In its findings of fact, the nine month custodial period is set out along with S.G.W.'s allegations of willful abandonment and willful neglect with supporting testimony. The court then concludes:

> The Court having heard the evidence, orders that the minor child, C.W., born on the 19th day of August, 1979, be adopted by Petitioner and Co–Petitioner; that the Court, having considered all of the factors contained in Chapter 453 of the Revised Statutes of the State of Missouri, determines that it is in the best interest and welfare of the minor child, C.W., born on the 19th day of August, 1979, be adopted to Petitioner and Co–Petitioner ...

The decree meets the requirements of § 453.080 because the facts, as evidenced by the testimony of S.G.W., R.B. and other witnesses, are set out in the trial court's findings of fact.

We, therefore, conclude that the adoption decree is not void for failure to "specifically find" a statutory exception to consent under § 453.040. In the absence of a statutory requirement for a specific finding and in the absence of a request for a specific finding, we conclude that the findings of fact and conclusion of law substantially comply with the requirements of § 453.080.

In her second point, R.B. contests the sufficiency of the evidence supporting the court's determination of willful abandonment and willful neglect. She asserts that there was no intent to abandon C.W. on her part because the separation was involuntary and with just cause and excuse and that she repented the separation during the statutory period. R.B. also asserts that there was no intent to neglect C.W. because she did not have access to C.W. to provide care and protection.

Our standard of review is that the decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). Appellate courts should exercise the power to set aside a decree on the ground that it is against the weight of the evidence with caution and a firm belief that the decree or judgment is wrong. *Id.*

The findings in an adoption decree must be supported by clear, cogent and convincing evidence. *Matter of T.C.M.,* 651 S.W.2d 525, 530, 531[5, 7] (Mo.App.1983). The burden is met when the evidence "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Adoption of W.B.L.,* 681 S.W. 2d 452, 455[1–5] (Mo. banc 1984), *quoting In re O'Brien,* 600 S.W.2d 695, 697 (Mo. App.1980). This burden of proof may be met even though there is contrary evidence. *Grissum v. Reesman,* 505 S.W.2d 81, 86[1] (Mo.1974). We note that adoption statutes are to be strictly construed in favor of the natural parent. *In re Adoption of R.A.B.,* 562 S.W.2d at 360[5].

Courts have defined willful abandonment as "a voluntary and intentional relinquishment of the custody of the child to another, with the intent to never again claim the rights of a parent or perform the duty of a parent, or second, an intentional withholding from the child, without just cause or excuse, by the parent, of his presence, his

care, his love and his protection, maintenance, and the opportunity for the display of filial affection." *In re Watson's Adoption*, 238 Mo.App. 1104, 195 S.W.2d 331, 336[2] (1946). "There must be a settled purpose to forego all parental duties and relinquish all parental claims throughout the statutory period." *Matter of K.M.B.*, 544 S.W.2d 590, 592[4–7] (Mo.App.1976). Willful neglect has been defined to be "deliberate and intentional neglect, without excuse or cause, which evidences a settled purpose to forego parental duties." *Willard v. Doyle*, 612 S.W.2d 884, 888[2–4] (Mo.App.1981).

■ A determination that R.B. willfully abandoned and willfully neglected C.W. requires an examination of appellant's intent, which can be inferred from all of the evidence of her conduct before, during and after the six month statutory period. *In re R.A.B.*, 562 S.W.2d at 358[1–4]. In this regard, deference is given to the trial court on factual issues "because it is in a better position not only to judge the credibility of witnesses and the process directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *In re Adoption of W.B.L.*, 681 S.W.2d at 455[8–10]. As trier of fact, the trial court has leave to believe or disbelieve all, part or none of the testimony of any witness. *Willard v. Doyle*, 612 S.W.2d at 888[1].

■ Here, R.B.'s intent to willfully abandon C.W. was manifested by her voluntary relinquishment of C.W. to petitioner, S.G.W., in June, 1980, by her failure, at any time, to attempt to modify the custody provision of the dissolution decree, and by her failure to establish any type of communication and/or contact with C.W.

In June, 1980, S.G.W. took C.W. for a two week visit back to Pennsylvania with R.B.'s consent. After the two week period expired, there is no indication that R.B. made any purposeful effort to regain custody or to see C.W. Although she made several telephone calls to S.G.W. and returned to Pennsylvania on at least two occasions, she did not attempt to regain custody or to visit C.W.

R.B. did not contest the dissolution petition's allegations of abandonment or neglect, nor did she try to obtain custody or reasonable visitation at any time.

Over the next six years there was no direct contact between R.B. and C.W. R.B. did not send a letter, card or gift to C.W. She made sporadic attempts by telephone to contact S.G.W. through his parents in Missouri.

R.B. claims as an excuse for abandonment of C.W. that she was unaware of C.W.'s location in Missouri. R.B. did admit to knowledge of S.G.W.'s and C.W.'s move from Pennsylvania in 1981, and of S.G.W.'s parents' address in Missouri. At neither the Pennsylvania address nor the Missouri address did she send letters, cards or gifts for C.W.

During this six year period, R.B. took no affirmative action to discover C.W.'s whereabouts. She did not contact any court, police, state family services division, missing children organizations, or any organization concerned with the welfare of children. Even though R.B. may have been financially unable to secure an attorney's services, she did not attempt, through the police and/or the court system, to locate C.W. or secure any custody and/or visitation rights. Even after her marriage to L.B. in 1984, when she admittedly had the financial capacity to retain an attorney, she took no action. The trial court found that at no time did R.B. seek to have the dissolution custody decree reviewed in an attempt to alter her lack of custody and/or visitation rights. These failures to act show a continued lack of interest in her duties as a parent and a lack of concern for C.W.'s welfare.

■ During the six month statutory period, R.B. made two telephone calls to S.G.W.'s mother and expressed her interest in seeing C.W. R.B. also called S.G.W. once to express her intention to reestablish con-

tact with C.W. R.B. argues that these telephone calls manifested an intent to repent the abandonment. Not every gesture by a natural parent will terminate abandonment. *In re Adoption of W.B.L.*, 681 S.W. 2d at 455[6, 7]. These attempts at contact with C.W., at best, were merely token efforts to reestablish a parent-child relationship that had not been in existence for six years. *See In re Interest of A.R.M.*, 750 S.W.2d 86, 93–94 (Mo.App.1988). Clearly, the primary focus of R.B.'s interest in C.W. developed at or after the time of the filing of the adoption petition. This is not consistent with the desire of a parent to establish a relationship with her child.

The trial court is in a better position to judge the credibility of S.G.W., R.B. and the other witnesses and therefore, we conclude, after reviewing the record, that the trial court's determination of willful abandonment is supported by clear, cogent and convincing evidence.

██ Since our conclusion as to R.B.'s willful abandonment of C.W. is dispositive of point two, it is not necessary to extensively discuss the contention relating to willful neglect. Suffice to say, our review of the record indicates the finding of "willful neglect" has clear, cogent and convincing evidentiary support. R.B.'s second point is not meritorious.

The record clearly establishes that it is in the best interest of C.W. that the adoption decree be affirmed. The guardian ad litem for C.W. has filed his motion for assessment of fees and we have reviewed same, and find it to be reasonable relative to his work on this appeal. Therefore, we order that the sum of $694.86 be assessed as costs against petitioners.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.