In the Interest of R.A.M. and D.M.M., minors under 17 years of age.

Melvin WILLIAMS, Juvenile Officer, Petitioner–Respondent,

v.

K.M., Respondent–Appellant.

No. 15371.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 2, 1988.

Jay R. Yorke, Dexter, for respondent-appellant.

Dennis P. Wilson, Parsons, Mitchell, Wilson & Satterfield, P.C., Dexter, for petitioner-respondent.

FLANIGAN, Judge.

Pursuant to §§ 211.442 through § 211.487,[1] the juvenile officer of Stoddard County instituted this proceeding to terminate the parental rights of Kathy M. with respect to her two natural children, Robert who was born April 12, 1983, and Dana who was born December 26, 1981. A guardian ad litem was appointed for the children. A hearing was held at which evidence was introduced by the juvenile officer and by Kathy. On June 19, 1987, the trial court entered its order terminating the parental rights of Kathy with respect to both children. The order placed the children in the custody of the Division of Family Services, subject to the continuing jurisdiction of the court. Kathy appeals.

Kathy asserts that the trial court erred in entering the order terminating her parental rights because: (a) there was no clear, cogent, and convincing evidence to support termination in that there was no substantial evidence that the children were being abused by Kathy or that she knew

her children were being abused by another and permitted said abuse to occur; (b) there was no clear, cogent, and convincing evidence that termination was in the best interests of the children; and (c) less restrictive alternatives were available because the children could have been in the custody of the Division of Family Services while Kathy "worked toward their return," and the order denied Kathy due process of law and improperly interfered with her fundamental right as a parent.

Section 211.447.2 authorizes termination of parental rights if the juvenile court finds that termination is in the best interests of the child and when it appears by clear, cogent, and convincing evidence that one or more of certain specified grounds for termination exists. The independent ground on which the instant order is based is set forth in § 211.447.2(2)(c) which, in pertinent part, reads:

"(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

\* \* \* \* \* \*

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent ... or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family ..."

The events which culminated in this proceeding first came to the attention of the juvenile authorities in August 1986. On August 1, the boy, Robert, was admitted to a hospital in Dexter where he was treated by Thomas Henderson, M.D. Dr. Henderson, called as a witness by the juvenile officer, testified that appellant Kathy brought Robert to the emergency room. She said Robert was having some difficulty walking. Kathy told Dr. Henderson that her husband Eugene C., who is not the

father of either child, had been playing with Robert and had fallen on him.

Dr. Henderson's examination of Robert disclosed bruises or contusions of both buttocks, contusions on both sides of the face, discoloration and bluishness in the groin area and the penis, and a burn to the left upper lip. X-rays disclosed a fracture of the pelvic bone. Robert was hospitalized primarily for the pelvic fracture. Dr. Henderson was unable to determine what type of object had broken the pelvis.

Dr. Henderson testified that the burn on the lip was circular and well defined and it was his impression that it was a cigarette type burn. It was about the size of the end of a cigarette. Dr. Henderson described the injuries as evidence of abuse. Robert remained in the hospital approximately two weeks.

On August 2, 1986, Dr. Henderson saw Dana in the emergency room at the hospital. Dana had been brought there by case worker Helen Jones of the Division of Family Services. Dr. Henderson's examination of Dana disclosed marked contusions of both buttocks with obvious discoloration and bluishness.

Dr. Henderson had delivered both Robert and Dana and had seen them on several occasions for various childhood illnesses. He had not seen evidence of abuse of either child prior to his examination of Robert on August 1, 1986. Kathy told Dr. Henderson that Robert had not been able to walk for the last 10 to 12 hours before he was hospitalized. Photographs of both children, identified by Dr. Henderson, showed their condition upon their respective admissions to the hospital and confirmed the various injuries described by him. Dr. Henderson was of the opinion that the injuries to Dana's buttocks were caused by "an abusive paddling."

Social worker Helen Jones testified that on August 2, 1986, she went to the hospital in Dexter to investigate Robert's situation because she had received a "hot line" report from the Child Abuse Registry in Jefferson City. She arrived at the hospital about 7:30 a.m. where she found Robert. Kathy was not there. At 10:55 a.m. the witness contacted Kathy at her home. The witness went with Kathy to the home of Eugene's parents where they found Dana. The witness observed the injuries to Dana's buttocks and took her to the hospital. Later that day, at the jail, the witness talked with Kathy about the injuries to Robert and Dana. Kathy said that Eugene had whipped the children but she also said that she had whipped them. Kathy told the witness that Eugene had whipped the children in her presence and that he used a paddle, which was behind the kitchen stove at Kathy's home.

Kathy also told the witness that both she and Eugene used the paddle in spanking and that she held the paddle by the handle and it had a flattened piece on the end. On cross-examination by Kathy's counsel the witness testified that Dana said, "Daddy [Eugene] hurt Robert's lip."

Shirley Alexander, a police officer with the city of Dexter and also a deputy juvenile officer, participated in the investigation concerning the children. On August 2 she talked with Kathy "about the bruises and injuries that [the witness] had observed on Dana and Robert, and Kathy told [the witness] about how those bruises and injuries had occurred. Kathy told her that on several occasions the children had been hit with a paddle, that it had a wooden handle and a metal type end and that it was close to the stove in her home."

On August 3, 1986, Kathy wrote and signed a statement which she gave to witness Alexander. The statement reads:

"I have flew off the handle and hit the kids with a spatula and anything I have in my hands at the time. I have took speed (white spice) and have went out of control with frustration and hit my kids on the side of the face with the spatula. The kids have been hit with a paddle on their behind. The paddle is square at the end and have a wooden handle. The paddle should be behind the stove."

The witness went to Kathy's home and found the "paddle." The witness showed the instrument to Kathy and Kathy said it was the one which was used. A photo-

graph of it was admitted by agreement as Exhibit 10. This court's examination of that photograph shows that the instrument has an overall length of approximately 20 inches. The wooden handle portion of it is approximately 15 inches long and an inch and a half in diameter. The end of it is a flat metal blade approximately 6 inches long and 5 inches wide.

Called as a witness by the juvenile officer, Kathy testified that she had appeared in the Circuit Court of Cape Girardeau County "on some criminal charges in connection with the alleged abuse of my children Robert and Dana," and that she "had been convicted in that court of child abuse with regard to both Dana and Robert." Kathy testified that she was presently incarcerated in the county jail and that she had already done 10 months of the two 18–month concurrent sentences.

Kathy also testified that she had seen Eugene whip Dana once with the paddle. She admitted that Exhibit 10 was the photograph of "the paddle." She said the spatula with which she had struck Robert on the side of the face was a different instrument. That blow left a red mark. Asked if she had given several stories as to how Robert had received his injuries, Kathy admitted that she did tell somebody at one time that he had fallen in the bathtub and "that's how probably he broke his pelvis."

After the juvenile officer rested his case, Kathy testified in her own behalf. She was 25 when she married Eugene on July 4, 1986, and she divorced him in February 1987. She testified that Eugene "must have hurt my children because I haven't done it and the bruises had to come from somewhere." After Kathy and Eugene had been arrested and were in the jail in Dexter, Eugene told Kathy that he had kicked Robert.

She further testified that she loved the children, wanted them back, and thought that counseling would help her "work with my children." She admitted that she had "made some mistakes."

On cross-examination Kathy admitted that after divorcing Eugene she had written him letters telling him that she loved him and that he had done a good job with the kids. Other witnesses, including Kathy's parents, testified that Kathy was a good parent, loved the children, and spanked them only a few times. Kathy's mother testified that the children were afraid of Eugene. Sharon Tilley, Kathy's aunt, testified that although she knew Kathy was working a lot of hours, "I think everybody should have known [that the two children could have been hurt so badly]."

The trial court's order made certain findings and recited that they were based on "clear, cogent and convincing evidence." They include: a severe act and recurrent acts of physical abuse toward Robert have been committed by Kathy and by Eugene; the acts of physical abuse toward Robert committed by Eugene were done under circumstances that indicated that Kathy knew or should have known that such acts were being committed; recurrent acts of physical abuse toward Dana have been committed by Kathy and by Eugene and the acts of Eugene were done under circumstances that indicated that Kathy knew or should have known that such acts were being committed; the emotional ties of both children to Kathy were superficial; Kathy has maintained regular visitation or contact with the children insofar as her circumstances permit; because Kathy has been in custody since the discovery of the acts of abuse, although she is now in a work release program, the evaluation of payments by her for the cost of the care and maintenance of the children is not appropriate in these cases; additional [social] services would not be likely to bring about lasting parental adjustment on the part of Kathy, enabling the return of the children to her within an ascertainable period of time; Kathy has an interest and commitment to the children but the interest and commitment are inferior to her interest in her former husband Eugene; the convictions of Kathy and her sentences for terms totaling 18 months are not of such a nature that the children would be deprived of a stable home for a period of years for that reason; the deliberate acts of physical abuse to the children by Kathy and similar acts by Eu-

gene, of which Kathy knew or should have known, subjected the children to a substantial risk of physical and mental harm so as to show it would not be in the best interests of the children to return them to the custody of Kathy; the best interests of the children will be served by terminating all parental rights of Kathy as authorized by § 211.447.2(2)(c), and by continuing the legal custody of the children in the Division of Family Services subject to the continuing jurisdiction of this court.

■ In this court-tried case it was the responsibility of the trial court to determine whether the evidence clearly, cogently, and convincingly demonstrated the existence of the abuse forming the basis for the termination petition. It was also the trial court's responsibility to determine whether termination would be in the best interest of the children "with the preference toward leaving the child[ren] with the natural parent." *D.G.N. v. S.M.*, 691 S.W. 2d 909, 912 (Mo.banc 1985). While this court must examine whether the trial court applied the correct standard of proof, it must also accord due regard for the opportunity of the trial court to judge the credibility of the witnesses. Id. The order will be sustained unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law. Id.; *In re Interest of A.L.B.*, 743 S.W.2d 875, 879 (Mo.App.1987).

■ Although the abuse of Robert substantially exceeded the abuse of his sister Dana, the abuse of one child may justify the termination of parental rights not only with respect to the victim but also with respect to the sibling. *In re Interest of A.L.B.*, supra, at 882; *In Interest of A.M.K.*, 723 S.W.2d 50, 54 (Mo.App.1986). Kathy, as the natural mother of the children, owed each of them a duty to protect them and to report their abuser. *In Interest of A.M.K.*, supra, at 53; *In Interest of P.E.B.*, 708 S.W.2d 315, 319 (Mo.App.1986). Although love and good intentions are important considerations, the controlling factor, in determining whether reunification of Kathy with the children is appropriate, is the best interest of the children. *In Interest of A.M.K.*, supra, at 54.

■ Robert was the victim of a severe act of physical abuse which resulted in a fracture of his pelvis. He had other injuries. The evidence showed that the instrument which inflicted the injuries was of a type which should never be used for corporal punishment of a small child. The testimony of Dr. Henderson would support the conclusion that the burn to Robert's lip was intentionally inflicted by the use of a cigarette. Kathy knew that Eugene had whipped the children with the instrument, and she stated that she, too, had used it. In a criminal proceeding arising out of the circumstances giving rise to this proceeding, Kathy was convicted for abusing Robert and was sentenced to 18 months' imprisonment. She received a similar conviction and sentence with respect to abuse of Dana. Such convictions required proof beyond a reasonable doubt of Kathy's mistreatment of the children. Although Kathy has divorced Eugene, there was testimony indicating that she still loves him and that she told him that he "had done a good job with the kids."

This court concludes that the record is sufficient to support the finding of the trial court that termination is in the best interests of the children and that clear, cogent, and convincing evidence exists that a severe act of physical abuse was committed on Robert, and recurrent acts of physical abuse were committed on Robert and Dana, by Kathy or by Eugene under circumstances that indicate that Kathy knew or should have known that such acts were being committed.

An argument similar to prong (c) of Kathy's contention set forth in the second paragraph of this opinion was advanced and rejected in *In Interest of P.E.B.*, supra, 708 S.W.2d at 320–321. For the reasons there stated, prong (c) is rejected.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concurs.