**In the Interest of H.M., a minor.**

**No. 55217.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 18, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 1989.

Application to Transfer Denied
June 13, 1989.

John R. Bird, St. Louis, for appellant.

Lance C. Bretsnyder, St. Louis, for respondent.

CRIST, Judge.

Mother appeals the termination of her parental rights on the ground of abandonment pursuant to § 211.447.2(1)(b), RSMo 1986. We affirm.

The subject of this termination proceeding is H.M., a son born to mother on August 18, 1983. H.M. has been in the custody of the Division of Family Services (DFS) since January of 1984, when the juvenile court found he was without proper care, custody or support due to mother's incarceration. The whereabouts of H.M.'s father were, and still are, unknown. Father's parental rights were also terminated in this proceeding, but that decision was not appealed.

Mother was born in 1955. Aside from H.M., mother has five children, born in 1973, 1975, 1978, 1984 and 1987. None of these children live with mother. She has an extensive history of stealing, forgery and fugitive charges beginning with her first arrest in 1972. Mother has used approximately eleven aliases. Since the time DFS took custody of H.M., mother has been in and out of jail for a variety of charges. Mother is estimated to have been free for a total of ten months in the past five years. At the time of the termination hearing, mother was again incarcerated. She has never been married or employed, and has no property or income.

In June and August of 1984, DFS sent mother form letters entitled "Incarcerated Parents Letter" informing her DFS had custody of H.M. during her incarceration. The letters set out in some detail mother's continuing responsibility as a parent and urged her to maintain the relationship with her child at all times. DFS instructed mother to write to the child twice a month, write DFS to inquire about the child's welfare, visit with the child when possible, send gifts or cards for holidays, and contribute to the child's support. Mother was warned that if she failed to maintain a relationship with H.M. her parental rights could be terminated. Mother did not respond to the letter, but she mailed letters to H.M. in care of DFS on July 27, 1984, and September 23, 1984.

In March of 1985, mother signed an agreement whereby she was to visit with H.M. at DFS at least once a month. Mother also agreed to seek employment and contact DFS if employment was found or her address and phone number changed. A visit was scheduled for April 1, 1985, but mother did not attend. Mother did visit with H.M. for approximately an hour on June 28, 1985.

By September 3, 1985, mother's whereabouts were unknown to DFS. After failing in its efforts to contact mother, DFS discovered she was incarcerated again. The petition to terminate parental rights was filed on March 7, 1988. Mother wrote H.M. a letter on June 6, 1988, nearly three years after her last contact with her son. In the same correspondence, mother wrote a note to DFS stating she wished to keep her parental rights in H.M.

The termination hearing was held on July 21, 1988. Mother was present at the hearing, but did not testify. She made no effort to offer any explanation of her failure to support or maintain contact with her child. The court found mother had abandoned H.M. for a period exceeding six months before the filing of the petition because she, without good cause, left H.M. without any provision for parental support and without making arrangements to visit or communicate with H.M., although able to do so. The court further found termination of parental rights was in the best interest of the child. In accordance with this finding, the court terminated mother's parental rights to H.M.

Mother contends the court erred in finding she abandoned H.M. within the meaning of § 211.447.2(1)(b) because there was no evidence she was capable of supporting or visiting or communicating with H.M. and good cause existed for her failure to do so.

The applicable provisions of § 211.447 provide:

2. The juvenile court may terminate the rights of a parent to a child ... if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence

that one or more of the following grounds for termination exist:

(1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months or longer ... at the time of the filing of the petition:

....

(b) The parent has without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so[.]

§ 211.447.2(1)(b), RSMo 1986.

Factors the court should consider when deciding whether or not to terminate parental rights on the ground of abandonment include the following:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so ...;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child[.]

....

4. The court may attach little or no weight to infrequent visitations, communications or contributions.

§§ 211.447.3(1)–(5) and 211.447.4, RSMo 1986.

Mother contends she was unable to support and maintain communication with her son during the six-month period immediately preceding the petition to terminate her parental rights because she was incarcerated. Mother asserts, and we agree, that incarceration alone cannot be used as a ground to terminate parental rights. *See In Interest of Baby Girl W.*, 728 S.W.2d 545, 548[6] (Mo.App.1987).

Mother relies on *Baby Girl W.* for the proposition that when a court terminates parental rights on the ground of abandonment there must be "evidence showing some ability on the part of the parent to make a monetary contribution toward support of the child ... and accessibility of the child for purposes of visitation or communication." *Id* at 547 [1].

Mother's argument ignores the fact that the circumstances in *Baby Girl W.* are very different from the circumstances in this case. In *Baby Girl W.*, the mother concealed the baby's birth from father. By the time father learned about the baby he had been imprisoned. There was no evidence adduced that father had the ability to support the child or knew where the child was so that he could communicate with her. Despite his incarceration, the father of Baby Girl W. actively fought to preserve his parental rights. Under those circumstances, the court found there was insufficient evidence that father had abandoned the child. Later, the same court cautioned that "[t]he import of *Baby Girl W.* should not be extended beyond its unusual circumstances." *In Interest of C.R.*, 758 S.W.2d 511, 513 (Mo.App.1988).

In this case, uncontroverted evidence established mother's continuous absence from H.M.'s life. Mother contends her imprisonment precluded her from contributing to his support, but even when out of prison mother made no effort to support her son. She never obtained employment, instead she repeatedly committed crimes resulting in extended incarceration.

Unlike the father in *Baby Girl W.*, mother had the opportunity to visit with H.M. Mother was free to contact H.M. through DFS when she was out of prison. She visited him one time for one hour. Mother was free to write to H.M. in care of DFS while she was incarcerated. She wrote him two letters in 1984 and one after the petition for termination was filed. Mother seemingly ignored the warning by DFS that a failure to maintain contact with her son could result in the termination of her parental rights. She attempts to excuse this failure on the ground that H.M. cannot read; however, we do not find this argument persuasive. As was explained to

mother in the letters from DFS, "even small children appreciate hearing a parent's letter read to them by another adult." *See In re Adoption of M.D.L.*, 682 S.W.2d 886, 889[5] (Mo.App.1984) (evidence father failed to follow DFS recommendations regarding sending letters, cards and gifts while incarcerated and had no contact with child was sufficient to support finding of abandonment).

In this case mother offered no explanation for her inaction aside from her incarceration. "The juvenile officer is not required in the first instance to negate every possible excuse or reason for a parent's failure to support and to maintain contact with [her] child." *In Interest of C.R.*, 758 S.W.2d at 514[5].

There is no question that termination is in the child's best interest. H.M. has been in the custody of DFS for all but five months of his five-year life. Mother has been out of jail approximately ten months of those five years. She has no emotional ties to H.M. and has devoted little effort to establishing any. The termination of mother's parental rights on the ground of abandonment was supported by clear, cogent and convincing evidence.

Judgment affirmed.

CRANDALL, P.J., concurs in opinion of CRIST, J., in separate opinion.

KAROHL, J., dissents in separate opinion.

**CRANDALL, Presiding Judge, concurring.**

I concur in the majority opinion of Crist, J. The mother in this case has chosen to live her life in a way which has resulted in, and will continue to result in, the extended separation from H.M. Her meager efforts at maintaining contact with the child have been token, at best; and the juvenile court is entitled to give little or no weight to such frail efforts on the part of a parent. *See* § 211.447.4, RSMo (1986). Clearly, mother's conduct evinces an intent to forsake the status of a parent. It is significant that, at the termination hearing, mother did not testify and explain her failure to support and to maintain contact with her child.

The Missouri Legislature has recognized, *inter alia*, that the conviction of a parent of a felony that is of such a nature that the child will be deprived of a stable home for a period of years is a factor in deciding whether the child has been abandoned. Section 211.447.3(6), RSMo (1986). This legislative enactment simply reflects existing case law. *See In the Interest of A.R.M.*, 750 S.W.2d 86, 89 n. 2 (Mo.App. 1988). Here, mother's history of repeated incarcerations certainly is a factor to be considered by the juvenile court in determining whether to terminate the parent-child relationship.

Mother has not been a parent to H.M. since the child's infancy. This termination proceeding merely formalizes as a matter of law that which has existed as a matter of fact. I concur in the affirmance of the judgment.

**KAROHL, Judge, dissenting.**

I respectfully dissent. The evidence offered by the juvenile officer was insufficient to support the only alleged ground to terminate the parental rights of appellant D.H., the natural mother.

Section 211.447.2(1) RSMo 1986 authorizes a termination where a child has been abandoned. The juvenile officer petitioned the court to terminate parental rights because D.H. abandoned her child for a period of six months preceding March 7, 1988. This section of the statute permits the court to find abandonment if, during a six month period, "(b) [t]he parent has without good cause, left the child without any provision for parental support *and* without making arrangements to visit or communicate with the child, although able to do so." (Emphasis added). The evidence offered to the juvenile court was insufficient to prove this pleading.

The juvenile officer did not allege the ground authorized in § 211.447.2(3) as a ground for termination. It appears that section would have been more appropriate to the facts and the opinion of the majority of this court.

There are a number of unsettled problems with termination for abandonment in the present case. First, the juvenile court transferred legal custody of H.M. to the Division of Family Services by order entered on June 4, 1984. That transfer of legal custody has never been altered. This fact creates a serious problem for the juvenile officer who undertook to prove that D.H., the mother, left her son during a six month period prior to March 7, 1988, "without any provision for parental support." The transfer of custody order, in effect throughout that period, makes no mention whatever of a finding of ability to support or an obligation to support. On the contrary, it recites that the mother was in confinement and upon release should secure a source of income, to gain employment.

Second, the evidence of the juvenile officer was that during the period referred to as the period of abandonment the mother was incarcerated. In the absence of evidence of assets or income, and there was none, the juvenile officer failed to prove mother was without good cause in failing to provide support during the abandonment period.

Because of the order changing legal custody, the incarceration and absence of the slightest proof of ability to support the ground for termination was not proven. Given the change in custody order such proof may have been impossible.

Third, the *second* part of § 211.447.2(1)(b) follows a conjunctive "and" and relates to arrangements to visit or communicate with child, "although able to do so." The juvenile officer's evidence proved D.H. was not able to visit with her child during the period of alleged abandonment, she was in custody in Chillicothe, Missouri and the child in St. Louis, Missouri. The evidence of when, if at all, D.H. could have visited with her son, but did not, is naught. Regarding communication, the evidence of juvenile officer confirmed the obvious, H.M., cannot read. Accordingly, communication by letters was of little significance.

There is no apparent explanation why the juvenile officer proceeded under § 211.447.2(1) [abandonment] when the more appropriate ground would have been under .2(3). The foundation of a termination under .2(3) is jurisdiction of the juvenile court for a period of one year. That was established by the court record. Assumption of jurisdiction and transfer of legal custody occurred June 4, 1984. The circumstances requiring such jurisdiction persisted and there was evidence from which the court, under such pleading, could conclude that there was little likelihood conditions would be remedied. There was evidence D.H. may be released from her imprisonment four months after the trial court hearing, in November, 1988, but that would not have been a sure defense.

One problem with an approach under .2(3) is the statutory requirement the court consider and make findings on the success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis. In the present case a social worker representing the Division of Family Services testified. She testified that her duties were "to facilitate the reunification of family members by implementing and carrying out a case plan ... arrange transportation between natural parents and children, so they may visit each other, and refer the family members for needed services." The witness recognized D.H. was at Chillicothe Correctional Center. She admitted incarceration played a part in a recommendation for termination. She acknowledged that she had made no arrangements for visitation of H.M. with his mother in Chillicothe because "it's hard to facilitate transportation that far." When asked what efforts during the six month abandonment period were used to rehabilitate or reunite mother and child, the answer was "I've just written her a letter." The next question and answer are very troublesome:

Q. No service has been provided to attempt to reunite her with the child?

A. No.

On the one hand, the juvenile officer supported the petition for termination of parental rights because D.H. failed to write

letters to a four year old. On the other hand, the evidence is a single letter was sent to the mother, who was known to be incarcerated within the State of Missouri, and no other efforts were expended "to facilitate reunification". It is understandable the petitioner did not desire court findings on the success or failure of the juvenile officer or the division.

Perhaps D.H. has forfeited her favored position as a parent. Perhaps she was entirely responsible for all of her own troubles. Certainly she has never been a mother for H.M. But much more is at stake in enforcing a termination of parental rights statute. Termination may be permitted only as authorized by the legislature. The legislature has never stated habitual criminal conduct is or should be, a ground for termination. The opinion of the majority appears to create that as a common law ground for termination of parental rights and excuses proof of the alleged ground of abandonment. I would reverse and remand for further proceedings under the continuing jurisdiction of the Juvenile Court.