**In the Interest of D.R.M., A Minor.**

**No. WD 41684.**

Missouri Court of Appeals,
Western District.

Nov. 21, 1989.

**146**

Gary V. Cover, Clinton, for appellant.

John L. Pursley, Butler, for respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

LOWENSTEIN, Presiding Judge.

This is an appeal from an order terminating the parental rights of the natural father, Daniel Magill, and ordering the adoption of D.R.M. by the maternal grandparents. The judgment is affirmed.

D.R.M., a female, was born to Daniel and Mary Magill on October 7, 1983. Marital problems developed and Daniel twice contemplated and attempted suicide in 1985. On April 14, 1985 Daniel was again contemplating using his shotgun to commit suicide. Mary and D.R.M. arrived home at which time Daniel and Mary began to fight. Mary broke free and ran for the door, but Daniel grabbed the shotgun and shot her in the back, killing her. All this happened in front of the child.

Daniel was originally charged with second degree murder, however, he pled guilty to and was convicted of voluntary manslaughter. Daniel was sentenced to twelve years in the Missouri Department of Corrections. His minimum conditional release date is April 13, 1994, and his earliest parol date is April 13, 1993.

On April 14, 1985, D.R.M. was found by the Juvenile Court of Henry County to be neglected, and was made a ward of the court. She was placed with her maternal grandparents, Theodore and Rosalee Bridges, and has been in their care ever since. In May, 1987 the Bridges filed a petition to adopt Danielle but later dismissed it on advice of counsel. On October 12, 1988, the Bridges filed a second Petition for Termination of Parental Rights of Natural Father and a Petition for Adoption in the Juvenile Division of the Circuit Court of Bates County. The Petition for termination was consolidated with the neglect proceeding pending in Henry County. On January 13, 1989, the court held a trial and issued its Order terminating the parental rights of Daniel on the grounds of abandonment and ordering the adoption of D.R.M. by the Bridges. Daniel appeals this decision.

The standard of review in a court tried case where the rights of a parent have been terminated is upon both evidence and law. *In Interest of H.J.P.*, 669 S.W.2d 264, 270 (Mo.App.1984). The appellate court must give due regard for the opportunity of the trial court to judge the credibility of the witnesses. *In Interest of R.A.M.*, 755 S.W.2d 431, 435 (Mo.App.1988). The order will be sustained unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

## TERMINATION OF DANIEL'S PARENTAL RIGHTS

The statute concerning termination of parental rights is § 211.447, RSMo 1986. It reads in pertinent part:

2. The juvenile court may terminate the rights of a parent to a child ... if it finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

(1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months

or longer ... at the time of the filing of the petition:

\* \* \* \* \* \*

(b) The parent has without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child ...[.]

\* \* \* \* \* \*

3. When considering whether to terminate the parent-child relationship pursuant to subdivision (1) ... of subsection 2 of this section, the court shall evaluate and make findings on the following factors ...:

\* \* \* \* \* \*

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

\* \* \* \* \* \*

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent ... which the parent knew or should have known that subjects the child to a substantial risk ... of mental harm.

\* \* \* \* \* \*

4. The court may attach little or no weight to infrequent visitations, communications, or contributions.

Sections 211.447.2(1)(b); 211.447.3(1)–(6); and 211.447.4, RSMo 1986.

There was conflicting testimony as to the amount of contact Daniel had with D.R.M. after his incarceration. Rosalee Bridges testified that Daniel had provided no financial support to the Bridges and had made only one attempt to communicate with D.R.M. at their home. Daniel testifed that although he had not seen D.R.M. for over three years, he frequently sent cards and letters to her addressed both to the Bridges' home and his sister's home where Danielle often stayed. However, the court could have found this correspondence "developed at or after the time of the filing of the [first] adoption petition. This is not consistent with the desire of a parent to establish a relationship with [his] child." *In re C.W.*, 753 S.W.2d 933, 940 (Mo.App. 1988). The court did not find the testimony in Daniel's favor to be credible. *In Interest of R.A.M., supra.* It cannot be said there was no substantial evidence to support the order nor that it was against the weight of the evidence. *Id.*

*Effect Of Felony Conviction*

In a case almost directly on point, the Missouri Court of Appeals for the Eastern District found that, although imprisonment of a parent does not per se constitute abandonment, it is a relevant factor. *In Interest of A.R.M.*, 750 S.W.2d 86, 89 (Mo.App. 1988). *See In Interest of H.M.*, 770 S.W.2d 442, 444 (Mo.App.1989). In *A.R.M.*, the father intentionally murdered his wife, resulting in a lengthy prison term. The court held:

Although father's incarceration is not per se determinative of his abandonment of A.R.M., the nature of the crime ... was a relevant factor....

[T]he intentional murder of one parent by another ... resulted in the disintegration of the family unit and left the child without even a modicum of parental nurturing during the incarceration of the remaining parent.

It is difficult to conceive of a more calamitous event for a child than the murder of her mother by her father. It is absurd for the perpetrator of such a vile act to argue that he should retain his parental rights concerning that child. We can presume that father knew of the probable devastating effect of his actions on A.R.M. and of the inevitable lengthy separation from her as a consequence of his incarceration. The crime itself creates an irreparable emotional estrangement of the child from the father. His lengthy sentence will result in a physical separation during all of A.R.M.'s formative years. There is not a scintilla of

hope that he could actually resume his parental responsibilities.

*In Interest of A.R.M.*, at 89–90.

The present case is not factually distinguishable from A.R.M. and, therefore, A.R.M. is dispositive on this point.

Daniel shot Mary in the presence of D.R.M. The trial court found that due to this deliberate act D.R.M. "is now fearful of persons raising their hands, guns going off, and [she] continues to have nightmares resulting from the shooting incident with her mother." Daniel should have known of the probability of such mental anguish of D.R.M. resulting from his actions.

ADOPTION BY THE GRANDPARENTS

■ The next question is whether the Bridges' adoption of D.R.M. is in the best interest of the child. D.R.M. has been in the sole care of the Bridges since the killing when she was one and one half years old. The Bridges provide a positive home environment for D.R.M. and take good care of her. Compared to the alternative, the finding of the trial court that adoption would be in the best interest of the child was not an abuse of discretion. *In Interest of A.R.M.*, at 90–91; *In Interest of H.J.P.*, 669 S.W.2d 264, 272 (Mo.App.1984).

The consent of the adoption of a child is not required of:

(1) A parent whose rights with reference to the child have been terminated pursuant to law;

\* \* \* \* \* \*

(5) A parent who has for a period of six months ... willfully abandoned the child....

Section 453.040(1), (5), RSMo 1986. There is substantial evidence to support the order of adoption. *In re C.W.*, 753 S.W.2d 933, 938 (Mo.App.1988).

Daniel finally argues that the trial court did not comply with § 211.447. He states the court did not make the requisite "findings" as required by § 211.447.2(3). *Id.* However, the trial court found D.R.M. to have been abandoned pursuant to § 211.447.2(1)(b). This section has no such specific language requiring "findings" be made. The only encompassing authorization for findings is § 211.447.3, which states that "[w]hen considering whether to terminate the parent-child relationship pursuant to subdivision (1) ... of subsection 2 ... the court shall ... make findings on the following factors, when appropriate and applicable to the case [,]" which includes the conviction of the parent of a felony and acts of the parent which subjects the child to a risk of mental harm. This the court did:

[T]his court finds ... that ... Daniel Ray Magill ... was found guilty of ... voluntary manslaughter....

\* \* \* \* \* \*

This Court finds ... that Daniel Ray Magill has willfully abandoned [D.R.M.] ... when ... in the presence of [D.R.M.] ... he knowingly shot and killed [her] mother....

\* \* \* \* \* \*

The court further finds ... that [D.R.M.] is now fearful of persons raising their hands, guns going off, and continues to have nightmares resulting from the shooting incident with her mother.

These findings are sufficient to comply with § 211.447.3.

Judgment is affirmed.