**In the Interest of M.S. and A.S., Minors.**

**Geoffrey ALLEN, Juvenile Officer, Respondent,**

v.

**J.P., Natural Mother, Appellant.**

**Mother, Appellant.**

**No. WD 44741.**

Missouri Court of Appeals, Western District.

May 5, 1992.

Jacqueline K. McGreevy, Kansas City, for appellant.

Sonja Matson, Kansas City, for respondent, guardian ad litem.

Mary A. Marquez, Kansas City, for respondent, juvenile officer.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

J.P., natural mother of minor children, M.S. and A.S., appeals from the trial court's judgment terminating her parental rights. J.P. argues the absence of substantial evidence supporting the court's decision to terminate her parental rights. Specifically, appellant contends the record is void of substantial evidence that (I) conditions of a potentially harmful nature to the children continue to exist; (II) continuation of the parent-child relationship greatly diminishes the children's prospects for early integration into a stable and permanent home;

(III) appellant was diagnosed with permanent mental disorders (IV) Division of Family Services' (DFS) continuous efforts to aid the mother adjust her circumstances to provide a proper home for the children were unsuccessful; (V) the children have few emotional ties to appellant; and (VI) termination of J.P.'s parental rights is in the children's best interest. The trial court's judgment is affirmed.

On March 28, 1991, the trial court held a hearing on the juvenile officer's petitions to terminate appellant's parental rights regarding M.S. and A.S., pursuant to § 211.-447, RSMo Supp.1990. The evidence at trial established the following facts. M.S., a male, born September 3, 1987, and A.S., a female, born August 21, 1988, are the natural children of J.P. In April 1988, DFS received a report that appellant was neglecting M.S., who was experiencing severe weight loss and failing to thrive. Less than a year later, in January 1989, DFS was informed that appellant abused and neglected M.S. by putting him in scalding bath water, blistering his feet, and then failing to seek medical attention for him. In March 1989, DFS was notified once more that appellant left M.S. unattended for eight hours, and that both M.S. and A.S. were unfed for extended periods of time. In April 1989, the children were placed in foster care.

The record documents that from April 1988, DFS consistently offered appellant varied programs and services intended to preserve her relationship with M.S. and A.S. These programs and services included Parents as Teachers, Visiting Nurse Association, WIC Assistance, Community Service Homemaker, psychiatric and psychological assessments, individual counseling, Children's Place Programs, New Horizons, and weekly supervised visitations between appellant and her children. Until August 1990, appellant visited regularly with M.S. and A.S. However, she moved her residence sporadically and routinely failed to notify DFS, making regular contact with the children difficult for DFS to arrange. After August 1990, appellant requested only one visit with M.S. and A.S., stating

that her attorney had advised her to ask for that visit.

DFS's services and programs did not improve appellant's parenting skills. Though appellant participated in most services offered by DFS, all providers indicated that progress was seriously limited by appellant's intellectual and emotional deficiencies. Social service worker for DFS, Ms. Jacqueline Thomas, stated appellant struggled with basic parenting functions. Specifically, Ms. Thomas testified that appellant manifested difficulty in learning how to prepare formula, how to feed a child, what and when to feed a child, how to bathe a child, when to change a diaper, how to identify and treat normal childhood illnesses, and how to discipline a child. Finally, Dr. Carla Polasek, child psychiatrist, conducted the mental examination of appellant and testified that appellant's intellectual limitations and emotional deficiencies are permanent impediments that preclude appellant from functioning adequately as a parent. Although Dr. Polasek completed a fellowship in child psychiatry, practices child psychiatry and served as the medical director of The Children's Place, she first completed a residency in general psychiatry.

On March 28, 1991, the trial court terminated appellant's parental rights. The trial court's judgments,[1] tracking the language of § 211.447.2(3), stated the following:

The Court finds by clear, cogent and convincing evidence that ... [the children have] been under the jurisdiction of the Juvenile Court for a period exceeding one year and conditions of a potentially harmful nature continue to exist, specifically the Court finds that [the mother] suffers from a mental condition which is permanent and such that there is no reasonable likelihood that the condition can be reversed and which renders the mother unable to knowingly provide the child[ren] the necessary care, custody and control. The Court also finds that the mother's mental condition will not be

remedied at an early state so that the child[ren] can be returned to the mother in the near future, and that the continuation of the parent-child relationship greatly diminishes the child[ren]'s prospects for early integration into a stable and permanent home.

. . . .

The Court [further] finds by clear, cogent and convincing evidence that the efforts of the Division of Family Services to aid the mother on a continuous basis in adjusting her circumstances or conduct to provide a proper home for the child[ren] were unsuccessful.... The Division offered numerous services to [appellant] in order to prevent the removal of her children from her custody; however, it became necessary for the Court to place the children in foster care.... It was clear that while the counseling service was appropriate given [appellant's] mental condition, it was ineffective in rectifying her situation. The Court finds the services offered by the Division were reasonable and appropriate.

. . . .

The Court finds by clear, cogent and convincing evidence that the child[ren] [have] few, if any, emotional ties to either parent.

. . . .

The Court finds by clear, cogent and convincing evidence that the termination of all parental rights ... would be in the child[ren's] best interest.

■ The trial court's decision to terminate a parent's rights will be affirmed unless the record contains no substantial evidence to support the judgment, the decision is against the weight of the evidence, or the trial court erroneously declares or misapplies the law. *In Interest of M.L.W.*, 788 S.W.2d 759, 762 (Mo.App.1990). Appellate courts review trial courts' decisions by viewing the evidence presented in the case under review, and any reasonable inferences from such evidence, in the light most

1. The trial court entered separate judgments terminating appellant's parental rights for each child, pursuant to the juvenile officer's two petitions. For purposes of this appeal, they are treated as one judgment.

favorable to the trial court's decision. *In Interest of M.L.K.*, 804 S.W.2d 398, 400 (Mo.App.1991). Clear, cogent, and convincing evidence that a violation of one or more of the statutory grounds prescribed by § 211.447 must exist in order to terminate a parent's rights. *In Interest of D.O.*, 806 S.W.2d 162, 166 (Mo.App.1991). "Clear, cogent and convincing evidence" does not imply the absence of conflicting evidence. "When the trial court has received conflicting evidence, appellate courts should review the facts in a light most favorable to the trial court's order." *In the Interest of M.E.W.*, 729 S.W.2d 194, 196 (Mo. banc 1987). The trial court determines the witnesses' credibility. *In Interest of D.O.*, 806 S.W.2d at 166. The child's best interest is the primary concern in any parental rights termination proceeding. *In Interest of M.L.W.*, 788 S.W.2d at 762.

## I

Appellant argues for her first point that the trial court erred in terminating her parental rights because no substantial evidence exists supporting the conclusion that conditions potentially harmful to the children continue to exist. Appellant protests Dr. Polasek's competency to render an opinion regarding appellant's intellectual functioning level. Appellant argues that Dr. Polasek's testimony does not support the finding that appellant's mental deficiencies prevent her from being a competent mother. Appellant maintains Dr. Polasek testified that if appellant lives with someone who functions as a parent, that appellant could learn parenting skills from that person and function satisfactorily as a parent. Finally, appellant asserts the absence of evidence establishing, as the court found, that conditions potentially harmful to the children continue to exist.

■ Dr. Polasek was competent to testify as a psychiatric expert witness and to render an opinion regarding appellant's level of intellectual functioning although Dr. Polasek practices as a child psychiatrist. When she evaluated appellant, Dr. Polasek was the Director of the Children's Place. Although Dr. Polasek completed a fellowship in child psychiatry, she first completed a residency in general psychiatry following her graduation from medical school. Additionally, appellant's failure to object to Dr. Polasek's competency to testify and to render her professional opinion of appellant's level of intellectual functioning waives the objection and her legal ability to contest Dr. Polasek's credentials to testify about the issue. *Eichelberger v. Barnes Hosp.*, 655 S.W.2d 699, 705 (Mo.App.1983).

■ Appellant's other asservations under her first point ignore evidence presented at trial. Dr. Polasek opined, after evaluating appellant, that appellant could not function effectively as a parent. Dr. Polasek diagnosed appellant to suffer from a personality disorder. Specifically, Dr. Polasek determined appellant functions with an immature personality disorder coupled with problems such as conduct disorder and borderline intellectual functioning. Dr. Polasek also testified that appellant's personality disorders are a long-standing pattern that appellant utilizes to cope with her life and that these disorders are chronic conditions which will continue as life-long problems. Ms. Thomas, a DFS social worker assigned to appellant's case, testified that the children were "at great risk" because appellant could not function as a competent parent. Therefore, the trial court's judgment is substantially supported by evidence establishing that appellant's mental condition prevents her from knowingly providing her children proper care, custody, and control, and that this condition will continue to exist. Appellant's first point is denied.

## II

■ As her second point, appellant argues the absence of substantial evidence to support the trial court's finding that continuation of appellant's relationship with her children diminishes the children's prospects of early integration into a permanent and stable home. Appellant contends that Dr. Polasek's testimony promotes a structured family environment which includes an individual acting as parent and living with appellant and her children. Appellant asserts that such a "home" environment would

preserve the parent-child relationship for appellant and her children.

Appellant's argument does not consider her inability to properly rear and adequately care for her children. Dr. Polasek testified that appellant's permanent mental deficiencies make her incapable of properly rearing the children. Appellant's proposition to have a perpetual surrogate parent instruct her on how to be a parent, due to her permanent limitations, is undesirable. Though in theory the proposal may be feasible, in reality such a situation would be impossible. Appellant's argument also fails to consider the opportunity her children have to assimilate into a competent home environment. Ms. Thomas testified the children were doing well with their foster parents and that the children treated their foster parents as if they were their own natural parents. Ms. Thomas further testified that the foster parents desire to adopt the children if appellant's parental rights are terminated. The trial court properly found that continuation of appellant's relationship with M.S. and A.S. would greatly diminish the children's prospects of early integration into a beneficial and stable home environment. Appellant's point II is denied.

### III

■ Appellant argues for her third point that the trial court did not find she suffers from a mental condition which renders her unable to knowingly provide her children necessary care, custody, and control. Appellant also contends there is absent sufficient evidence demonstrating that she suffers from a permanent debilitating mental condition and that she is unable to knowingly provide the children necessary care, custody, and control.

The trial court found, pursuant to § 217.-447.2(3)(c), that appellant suffers from a permanent mental disorder which renders her unable to provide for her children's necessities. The court specifically stated "that [appellant] suffers from a condition which is permanent and such that there is no reasonable likelihood that the condition can be reversed and which renders the mother unable to knowingly provide the child[ren] the necessary care, custody and control."

The record also establishes that Dr. Polasek diagnosed appellant to suffer from a chronic, permanent, nonreversible mental disorder. Dr. Polasek testified that appellant's mental deficiencies prevented her from providing her children with proper care, custody, and control. Therefore, substantial evidence supports the trial court's findings made pursuant to § 211.447.2(3). Appellant's third point is denied.

### IV

■ Appellant next contends that the evidence failed to prove DFS was unsuccessful in assisting appellant to provide a proper home for the children and that additional DFS services would not be beneficial. Appellant also asserts that Ms. Thomas' and Cheryl McCormick–Mann's testimonies indicate that the services developed by DFS for appellant did not consider appellant's illiteracy and her low verbal skills.

Section 211.447.2(3)(b) prescribes that the trial court shall consider, when determining whether to terminate a parent's rights, "[t]he success or failure of the efforts of the juvenile officer, the Division or other agency to aid the parents on a continuing basis in adjusting his [or her] circumstances or conduct to provide a proper home for the child...."

DFS offered numerous services to appellant, pursuant to § 211.447(3), initially designed to improve appellant's parenting skills, thereby precluding the necessity to remove the children from appellant's home. Later, the services rendered appellant by DFS were designed to reunify appellant with her children. DFS provided a therapist's services who worked extensively with appellant to improve appellant's parenting skills. Other services and programs rendered appellant included a visiting nurse, Parents as Teachers, psychological and psychiatric evaluations, a community service homemaker, a social service worker, and weekly supervised visitations between appellant and her children.

The evidence demonstrates that these services offered to appellant by DFS were ineffective and unsuccessful. Dr. Polasek

opined that, in her expert opinion, these services were appropriate for appellant. Dr. Polasek further testified that appellant's own intellectual and emotional limitations prevented her from attaining any benefit from the services, and any additional attempts to help appellant would be futile.

The appellant is unable to read adequately. Ms. Thomas testified that appellant's illiteracy precluded appellant's reading material provided by DFS to assist and educate her. Additionally, Ms. McCormick–Mann, a child and family therapist for Children's Place, testified that appellant's inability to read prevented appellant from fully benefiting from the services DFS provided.

Appellant cites *In the Interest of R.H.S.*, 737 S.W.2d 227, 23 (Mo.App.1987), for the proposition that "[t]he plan [designed by DFS] must not be meaningless: due process requires that the plan address the problems that jeopardize a parent's rights." Appellant contends that the evidence does not support the trial court's finding that the services rendered by DFS were reasonable and appropriate and that additional services were not likely to enhance parenting skills, considering appellant's limitations, including her deficient reading skills.

Many services provided appellant by DFS were not dependent upon appellant's ability to read. DFS offered extensive and varied services and programs which, except for appellant's controlling persistent mental limitations, could have developed appellant's parenting skills sufficiently to effectuate improved parenting skills and appellant's reunification with her children. Therefore, sufficient evidence was presented at trial demonstrating that DFS made meaningful appropriate efforts to aid appellant's effort to reunite with her children and to prove that these services and programs were unsuccessful. Appellant's fourth point is denied.

V

■ Appellant's next point on appeal avers the absence of substantial evidence to support the trial court's finding that the children have few, if any, emotional ties to appellant. Section 211.447.3 provides that "[w]hen considering whether to terminate the parent-child relationship ..., the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case: (1) The emotional ties to the birth parent...." Ms. Thomas testified that she thought appellant was very loving as a mother, the children were not afraid of their mother, and that the children were willing to be with their mother. Appellant asserts that Ms. Thomas' testimony demonstrates that the children are emotionally bonded to their mother. Appellant also recites the trial court's statement recognizing that appellant loved and cared for her children. Appellant, therefore, argues that the evidence demonstrates emotional ties between parent and children.

The record discloses the absence of compelling emotional bonds between the children and appellant. Even though Ms. Thomas testified M.S. recognizes appellant as his mother, Ms. Thomas stated A.S. does not know that appellant is her mother. Ms. Thomas also testified M.S. and A.S. are strongly bonded with their respective foster parents. A.S. calls her foster mother, "Mom," and M.S. calls his foster mother and foster father, "Mom" and "Dad." The relationship between foster parents and the children is pleasant and comfortable for the children. Furthermore, Ms. Thomas testified that appellant had not visited the children since August 1990. The shallow emotional tie the children may experience with appellant is considered, but, taken by itself, is insufficient to warrant reversal of the trial court's decision. Therefore, based upon the record, there is substantial evidence supporting the trial court's finding that M.S. and A.S. have few, if any, emotional bonds with appellant. Appellant's fifth point is denied.

VI

■ Appellant argues for her final point on appeal that insufficient evidence supports the trial court's determination that termination of appellant's parental rights is in the children's best interest. *See* § 211.447.2. Appellant references Ms. Thomas' testimony that she has never personally observed appellant abusing the children. Additionally, appellant cites the tes-

timony of a neighbor, that she has never witnessed appellant abuse or neglect her third child.[2]

Contrary to appellant's argument, the weight of the evidence establishes that terminating appellant's parental rights is in the best interests of M.S. and A.S. Dr. Polasek testified that appellant suffers from chronic mental deficiencies which prevent appellant from providing her children with proper care, custody, and control. Dr. Polasek also testified that any additional services or programs offered by DFS would be futile. Ms. Thomas testified that appellant is unable to properly care for the children. Finally, Ms. Thomas testified that the children's best interests would be served by terminating appellant's parental rights so that they may be adopted. Based upon all the evidence presented at trial, substantial evidence supports the trial court's finding that the children's best interests are served by terminating appellant's parental rights. Appellant's last point is denied. The judgment is affirmed.

All concur.

---

**2.** Appellant has an additional child who was born after M.S. and A.S. were removed from the household. This child is also now in foster care.