**In the Interest of B.L.B.**

**P.L.B., Appellant.**

**No. 60185.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

June 30, 1992.

---

AHRENS, Judge.

The natural mother, P.L.B., appeals the termination of her parental rights to her daughter, B.L.B. The termination was pursuant to § 211.447 RSMo (Supp.1991). Appellant contends that there was no substantial evidence to support portions of the trial court's findings of fact, conclusions of law, and judgment.[1] We affirm.

Appellant and B.L.B.'s natural father[2] were married May 3, 1984, when appellant was 21 years of age. At the time of the marriage, appellant had a son born of a different father and out of wedlock following appellant's eighth grade year. B.L.B. was born August 9, 1984, and her parents separated the following month.

When B.L.B. was approximately six months old, appellant and her children moved in with B.K., appellant's paramour. A son was born of that relationship.

Although B.L.B.'s natural father had only seen her approximately three times in her lifetime, B.L.B. went to live with him during the summer of 1988. Approximately one month later, the father received a letter from appellant stating that she did not want B.L.B. back. Appellant moved out of state for a period of time and worked at a restaurant in Arkansas from February until June of 1989.

The father kept B.L.B. for several months, but turned her over to the Division of Family Services (DFS) on January 11, 1989, because of her behavioral problems. B.L.B. was placed in foster care at that time. Investigations during this period revealed allegations by B.L.B. of sexual abuse by B.K. and another individual, and found self-destructive behavior on the part of B.L.B. Because of this behavior, DFS arranged for a two-week hospitalization for a psychiatric evaluation of B.L.B. and provided counselling for her. The results of a medical examination were positive for sexual abuse.

William B. Beedie, Farmington, for appellant.

Shawn R. McCarver, Flat River, for respondent.

1. The trial court found that termination was in the best interests of B.L.B. as required by § 211.447.2 RSMo (Supp.1991). Appellant does not challenge that finding.

2. The trial court also terminated the natural father's parental rights. He does not appeal.

Appellant first learned that B.L.B. was in foster care on August 29, 1989, when a DFS worker came to her house to investigate a child abuse or neglect hot line call. Appellant had been the subject of three prior substantiated child abuse reports. Appellant did not follow up on the information that her daughter was in foster care until August 31, 1989.

Appellant first met with DFS personnel on September 14, 1989, at the DFS office. At that time, DFS personnel advised appellant of the allegations of sexual abuse and explained her parental rights. DFS also explained a "Notice of Client's Rights" which appellant signed. Appellant was advised that she was at risk of having her parental rights terminated. DFS assigned a caseworker to assist appellant in regaining physical custody of B.L.B. and scheduled a visit between appellant and B.L.B. for October 5, 1989.

This October 5, 1989, visit was the first visit or communication between appellant and B.L.B. since the summer of 1988. Following the visit, B.L.B.'s behavior worsened, and she reported that appellant instructed her not to tell anyone about incidents of sexual abuse. A second visit took place on December 14, 1989, and additional behavior problems followed. The court discontinued further visits later that month following the recommendation of B.L.B.'s counselor that contact with appellant was detrimental to B.L.B.

On February 27, 1990, the court granted appellant weekly visits on the condition that they be supervised at the DFS office. A visit was scheduled for March 2, 1990. Appellant arrived an hour and a half late, B.L.B. was gone, and the visit was cancelled. Another visit was scheduled for and occurred on March 13, 1990. During the visit, B.L.B. exhibited little sign of bonding or emotional ties with appellant. B.L.B. told appellant, "I don't want to live with you but I love you." Following the visit B.L.B.'s behavior deteriorated. She stated, "I hate my Momma P___. I don't want to see her again." Appellant cancelled a visit scheduled for March 23, 1990, for the stated reason that she did not have the money to attend. Another visit was held on April 9, 1990. Again, B.L.B.'s behavior deteriorated. Appellant did not attend a visit scheduled for April 16, 1990, nor did she contact DFS in any way to explain her absence. B.L.B.'s behavior worsened to the point that she had to be hospitalized for intensive therapy. The court again suspended visits on April 23, 1990.

On June 25, 1990, the court ordered counselling for appellant with the same counselor as B.L.B. An appointment was scheduled for August 13, 1990, but appellant did not keep the appointment. The petition to terminate parental rights was filed October 3, 1990. Appellant did not see the counselor until February 19, 1991. The counselor was able to have only two sessions with appellant due to appellant's lack of cooperation. The counselor stated that this was not sufficient to complete the goals set for appellant.

Throughout their dealings with appellant, DFS personnel found her to be "very unstable and flighty." DFS workers had trouble maintaining contact with appellant due to her continual moving. Appellant lived in at least ten different residences with numerous other people in three Missouri counties and Arkansas between the time DFS became involved in January, 1989, and the filing of the petition to terminate parental rights on October 3, 1990. DFS attempted to obtain numerous written service agreements with appellant, but could complete only one due to appellant's frequent moving. The agreement was filed on September 5, 1990. DFS stated that appellant did not comply with several of the agreement's provisions, that appellant had been offered all available services, and that no further services were available that could rectify the situation.

From the time DFS began working with appellant until the hearing on the petition to terminate parental rights held March 25, 1991, appellant's only employment was for a brief period at a nursing home. Appellant began work in July of 1990 and received $200 to $285 per week. She was frequently absent from work and was in-

jured at work on October 3, 1990. Appellant went to a doctor on October 5, 1990, and the doctor told her that she could return to work on October 9, 1990, but she never returned. Appellant resigned without notice on November 2, 1990. Appellant was receiving aid for families with dependent children (AFDC) and food stamps during the time DFS was working with her, and stated that she was better off receiving this aid than working. Appellant paid no parental support for B.L.B. after the summer of 1988.

■ Parental rights may be terminated where termination is in the best interests of the child and the trial court finds clear, cogent, and convincing evidence that one or more of the grounds in § 211.447 RSMo (Supp.1991) exist. *In re D.O.*, 806 S.W.2d 162, 166 (Mo.App.1991). When reviewing the decision of the trial court, this court considers the facts and reasonable inferences therefrom in the light most favorable to the trial court's order. *In re M.L.K.*, 804 S.W.2d 398, 400 (Mo.App.1991). We defer to the trial court's ability to judge the credibility of the evidence, and we will affirm the trial court's judgment unless no substantial evidence supports it, the weight of the evidence compels a different result, or the trial court erroneously declares or applies the law. *In re D.O.*, 806 S.W.2d at 166.

■ In her first point, appellant contends that the trial court erred in terminating her parental rights because there was no substantial evidence to support a finding that she abandoned B.L.B. Specifically, appellant asserts that during the six months prior to the filing of the petition for termination of parental rights, appellant participated in all court proceedings and was prohibited from visiting B.L.B.

The trial court based its finding of abandonment on § 211.447.2(1)(b) RSMo (Supp. 1991). The statute requires a finding of abandonment if for six months or longer for a child over one year of age "[t]he parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so." § 211.447.2(1)(b) RSMo (Supp.1991). Appellant does not contend that there was any provision for parental support, but rather asserts that she lacked the ability to visit or communicate with B.L.B. due to the court's suspension of visitation and her financial hardships.

■ The trial court in its findings of fact expressly considered the discontinuance of visitation and stated that appellant was not penalized for failing to visit during the times covered by the orders. The statute calls for a finding that the child has been abandoned when the parent has not made "arrangements to visit *or* communicate with the child." § 211.447.2(1)(b) RSMo (Supp.1991) (emphasis added). The statute does not require both. Also, the statute permits the court to "attach little or no weight to infrequent visitations, communications, or contributions." § 211.447.4 RSMo (Supp.1991). Further, whether the child has been abandoned is a question of the parent's intent, discovered by examining all evidence of the parent's conduct, including the conduct before and after the statutory period. *In re M.B.A.*, 709 S.W.2d 941, 948 (Mo.App.1986).

■ During the statutory period from April 3, 1990, until October 3, 1990, appellant had one visit with B.L.B. at the DFS office on April 9, 1990. On April 16, 1990, appellant did not attend a scheduled visit and did not contact DFS to explain her absence. The trial court suspended visits on April 23, 1990. However, impediments to visitation do not of themselves excuse a parent's obligation to provide a child with a continuing relationship. *Cf., In re M.L.K.*, 804 S.W.2d at 402 (incarceration). In the present case, the trial court's order did not prevent appellant from calling or writing B.L.B. Appellant testified that she is "not much of a letter writer." This does not excuse her obligation.

Appellant relies on *In re S___G. G___*, 779 S.W.2d 45 (Mo.App.1989). That case is distinguishable on its facts. In S___G. G___, the mother met every scheduled opportunity to visit with her child during the

statutory period. *Id.* at 54. Here, there is substantial evidence in the record that appellant, without good cause, failed to take advantage of visitation arrangements.

Appellant contends that she did not have the financial ability to visit or communicate with B.L.B., citing the dissent from *In re M.B.A.*, 709 S.W.2d 941. However, in that case "there [was] no serious dispute that at the time of trial that the mother was capable of caring for the children." *Id.* at 949 (Prewitt, C.J., dissenting). In the present case, DFS personnel, counselors, and the guardian ad litem were unanimous in their belief that appellant was incapable of caring for B.L.B. Additionally, there was testimony that appellant was able to pay the costs and find transportation to travel to another county to find housing. Furthermore, whatever financial inability there may have been for visits, it would not extend to communication, especially by letter.

The following factors constitute substantial evidence to support the trial court's finding of abandonment during the statutory period: the lack of emotional ties between B.L.B. and appellant; the negative effect of visitation on the child; the infrequent visitation and communication; appellant's sporadic work history and her failure even when employed to pay any support for B.L.B.; appellant's failure to follow the service agreement or to take advantage of offered services; and appellant's efforts to dissuade B.L.B. from talking about the sexual abuse. This finding is further supported by appellant's conduct prior to the statutory six month period. *See id.* at 948. Appellant indicated to the natural father in the summer of 1988 that she did not want B.L.B. back. Appellant had no communication or contact with B.L.B. from the summer of 1988 until October of 1989, and had a total of four visits thereafter. No support was paid even when appellant was employed. Point one is denied.

■ Appellant's second point is that the trial court erred in terminating her parental rights because there was no substantial evidence that the conditions which led to the assumption of jurisdiction still persist-ed in that she entered a service agreement with DFS, visited her daughter, and attended counselling. Appellant further asserts that there was no substantial evidence that conditions of a potentially harmful nature continued to exist in that she obtained alternate financial resources, maintained a home, and maintained contact with DFS.

Section 211.447.2(3) provides in pertinent part that grounds for termination of parental rights exist where:

> The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

§ 211.447.2(3) RSMo (Supp.1991).

Appellant concedes that B.L.B. was under the jurisdiction of the court in excess of one year. Appellant then alludes that the sole condition which led to the assumption of jurisdiction was her unavailability to care for B.L.B., and that this condition could only continue if appellant made no effort to regain custody of B.L.B. However, the trial court stated that the conditions leading to the assumption of jurisdiction were that B.L.B. was without proper care, custody, or support.

Appellant entered into a service agreement with DFS, but failed to comply with many of its terms. Appellant visited her daughter, but the visits were few and infrequent and constituted her only communication with B.L.B. Appellant attended counselling, but her attendance was infrequent, sporadic, insufficient to complete established goals, and not in compliance with the trial court's order. Substantial evidence existed to support the trial court's finding that the conditions which led to the assumption of jurisdiction persisted.

■ Turning to the continued existence of conditions of a potentially harmful nature, appellant points out that she maintained alternate financial resources in the form of AFDC and food stamps. She asserts that this should satisfy paragraph four of the service agreement which called for appellant to obtain and maintain steady employment or alternate financial resources. Appellant states that these resources were used to provide food, clothing, shelter, and other necessities. Significantly, appellant provided none of these things to B.L.B., even during the time appellant was working. Furthermore, the agreement required sufficient resources to cover the payment of bills. Appellant was not meeting that requirement, and she was making little effort to remedy the situation by obtaining and maintaining employment. Appellant's prospects for improvement in her financial situation were based on what she hoped was going to happen "if everything works out right." This is not concrete progress.

■ Appellant asserts that she met the requirements of paragraph five of the agreement which called for her to maintain an appropriate home for three consecutive months. Appellant points to the period before the hearing, but during the six months prior to the filing of the petition to terminate, appellant lived in at least five different residences. This does not meet the requirement of providing a stable home.

■ Paragraph six of the service agreement required appellant to pay child support for B.L.B. Appellant concedes that no child support was paid, but claims that she did not have the ability to pay. This cuts against her earlier contention of sufficient alternative financial resources to provide food, clothing, shelter, and other necessities; and ignores the fact that she paid no support when she was working. Appellant also relies on DFS's failure to request support payments, but a demand is not required to impose upon a parent a duty for some responsibility for the support of a child. *R.L.P. v. R.M.W.*, 775 S.W.2d 167, 171 (Mo.App.1989).

■ Paragraphs seven and nine of the service agreement required appellant to keep DFS informed of her current address and phone number and to maintain regular contact with DFS. In her brief, appellant attempts to explain why these requirements were not met, and implies that the failure was DFS's. This does not change the fact that the requirements were not met and that these were tasks to be completed by appellant. DFS did not know how to reach appellant due to her continual moving, and it was appellant's duty to remedy that. Appellant can not blame DFS for her inaction. *In re C.B.C.*, 810 S.W.2d 671, 675 (Mo.App.1991).

■ Finally, appellant contends that DFS did not make meaningful efforts to aid appellant. The record shows that DFS assigned a caseworker to assist appellant in regaining custody of B.L.B., arranged counselling and visitation, and prepared and implemented a service agreement. This is substantial evidence of DFS's efforts to aid appellant. Any failure of these efforts can be traced directly to appellant's lack of cooperation and compliance.

■ The lack of appellant's progress in complying with the terms of the service agreement and the extent of the efforts of DFS to aid appellant indicate that substantial evidence supports the trial court's finding that conditions of a potentially harmful nature continued to exist. Point two is denied.

■ In a proceeding to terminate parental rights, the trial court's order is sufficient to uphold termination if at least one of the grounds was adequately pleaded and proven. *R.L.P.*, 775 S.W.2d at 170. In the present case, two grounds were established. The order of the trial court is affirmed.

CARL R. GAERTNER, C.J., and GRIMM, J., concur.