**In the Interest of C.S.**

**Mike WADDLE, Juvenile Officer, Knox County Juvenile Office, Respondent,**

v.

**N.F., Appellant.**

**No. 67595.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 21, 1995.

Andrew Lange, Memphis, MO, for Appellant.

Wallace W. Trosen, Trosen & Williams, P.C., Kirksville, for respondent Knox Co. Juv. Off.

Clifford B. Mayberry, Mayberry & Mayberry, Kirksville, for guardian ad litem.

KAROHL, Judge.

Mother appeals a judgment from the juvenile court terminating her parental rights pursuant to § 211.447 RSMo.1994. The petition to terminate was filed In the Interest of C.S., who was born April 17, 1992. She contends there was insufficient evidence to support the decision.[1] We affirm.

C.S. lived with her natural mother and her husband (not the natural father), until May 5, 1993. Prior to that date, several substantiated hotlines were received alleging neglect, inadequate hygiene, and physical abuse of C.S. Excessive bruising and bite marks were found on C.S.'s arms, upper body, head and abdomen. During an investigation, mother's husband admitted he bit the child because he could not get her to stop crying. Despite the bruises, mother did not seek help. Husband also confessed to tying the baby with a bandanna around her limbs and laying her in bed so she could fall asleep. Mother was aware he tied C.S. and possessed pictures as proof. There was also evidence of sexual abuse.

On May 5, 1993, the Juvenile Court of Knox County took C.S. and ordered foster care for her in Lewis County. Mother was granted supervised visitation on a weekly basis.[2] On August 16, 1993, the Division of Family Services (DFS) and mother entered into a family treatment plan. Mother agreed to participate in individual counseling, a parenting skills class, drug and alcohol evaluation performed at Preferred Family Health Care, and weekly supervised visits with C.S. She also received a psychological evaluation which revealed she had a low IQ and borderline personality disorder. Social workers with DFS witnessed her act inappropriately during her supervised visits. She failed to complete any of the areas in the agreement.

She only attended seven counseling sessions and stopped visiting C.S. after October 1993. She attempted to resume her counseling several months later, but was unsuccessful.

On December 8, 1993, the court held a dispositional hearing at which time it suspended mother's visitation rights until she resumed counseling on a regular basis. The juvenile office instituted a termination proceeding which was heard on December 12, 1994. The trial court heard testimony from a psychologist, two DFS social workers, the Supervisor of Children's Services with DFS, a counselor with Professional Counseling Services, and a family preservation specialist. Mother did not testify.

The trial court entered findings of fact, conclusions of law and the judgment terminating parental rights. It found the following: (1) mother abandoned the child pursuant to § 211.447.2(1) RSMo1994; (2) C.S. was physically abused and neglected; (3) C.S. has been under the jurisdiction of the juvenile court for more than one year and conditions of a potentially harmful nature continued to exist; (4) under § 211.447.3 RSMo1994 the emotional ties that bind C.S. to mother were minimal; and (5) termination of mother's parental rights is in the best interest of the child. Mother appeals claiming the evidence was insufficient to support the judgment.

An order terminating parental rights will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review the facts in the light most favorable to the order. *In Interest of N.D.*, 857 S.W.2d 835, 838 (Mo.App.W.D. 1993). Parental rights may be terminated if it is in the best interest of the child and if the trial court finds clear, cogent, and convincing evidence exists for termination. *In Interest of B.L.B*, 834 S.W.2d 795, 799 (Mo.App.E.D. 1992).

Mother contends the trial court erred in terminating her parental rights because: (a)

---

**1.** The termination of natural father's rights is not appealed.

**2.** The need for these orders is not challenged.

there was no clear, cogent, and convincing evidence to support the termination pursuant to § 211.447 RSMo.1994; and, (b) no potentially harmful conditions existed.

Abandonment involves a parent's intent which may be discovered by examining all evidence of the parent's conduct, including the conduct before and after the statutory period. *Id* at 799. Mother's failure to visit C.S. for over a year constitutes evidence of minimal emotional ties. Mother stopped visiting C.S. and attending counseling sessions October 11, 1993. January 1994, she attempted to resume counseling but failed to appear for scheduled appointments. She did not see C.S. for over a year and made no effort to reestablish her relationship with the child. Dr. Jim May, a professional counselor, testified he attributed this to lack of commitment toward the child and her low IQ. He tried to help mother become "self-sufficient," to establish a home and to make herself ready for the return of her child. However, she could not meet these goals.

Mother defended her failure to visit the child and attend counseling sessions on transportation and employment problems. However, lack of transportation and employment problems will not excuse her obligation to her child. *See R.L.P. v. R.M.W.*, 775 S.W.2d 167, 170 (Mo.App.1989). Further, to accommodate mother's schedule, Dr. May testified he agreed to consolidate the supervised visits and counseling in order to reduce her traveling problem and time she missed from work. Mother fully agreed with this plan, however, stopped attending altogether before it could take affect.

Mother, although financially able, failed to provide or contribute to the cost of food, clothing and a safe and nurturing home for C.S. She made no arrangement to visit or communicate with the child. Thus, there was evidence of abandonment and neglect.

We also find substantial evidence to show mother knew or should have known about the severe acts of physical, emotional, or sexual abuse toward the child which led to the court assuming jurisdiction. *See In Interest of D.O.*, 806 S.W.2d 162 (Mo.App.1991). She knew her husband used to tie C.S. with a bandanna in bed creating a risk of suffocation. She also saw C.S. constantly bruised, but did not seek medical care for the child. A natural mother owes a duty to protect her child and report the abuser. *See In Interest of R.A.M.*, 755 S.W.2d 431, 435 (Mo.App. 1988).

Mother also challenges the finding that potentially harmful conditions continued to exist. There is substantial evidence to support the finding. Mother failed to complete the social services plan. DFS and the juvenile officers continually tried to aide mother prepare to provide a proper home for her child. Dr. May testified mother suffers from a mental condition which renders her prognosis poor and unable to provide for the child. Caroline Heatheman, a DFS social worker testified mother displayed inappropriate behavior on her supervised visits with the child. Heatheman observed mother fail to console the child during her crying tantrums. Mother provided no structure to the visits and had difficulty playing with her daughter. Heatheman testified that on one occasion mother began playing with the electrical outlets until she intervened. Mother's low IQ reduced her ability to respond to training and education, and her lack of motivation further suggested minimal likelihood for change. *See R.L.P. v. R.M.W.*, 775 S.W.2d 167, 172 (Mo.App.1989).

We find there is substantial evidence to support the trial court's findings, conclusions and decision to terminate mother's parental rights.

We affirm.

REINHARD, P.J., and RONNIE L. WHITE, Special Judge, concur.