**In the Interest of D.B., D.T., & S.L.B., Juveniles, Respondents,**

v.

**L.B.A., Appellant.**

**Nos. 67746 to 67748.**

Missouri Court of Appeals, Eastern District, Division One.

Feb. 20, 1996.

Shea & Kohl, Michael P. Shea, St. Charles, guardian ad litem.

John J. Smith, Legal Counsel for Juvenile Officer, St. Charles, for respondents.

KAROHL, Judge.

L.B.A. (Mother) appeals a final judgment terminating her parental rights to her three minor children. We affirm.

The court heard and considered the following in support of a petition to terminate parental rights. Mother has three minor children: D.B. born May 26, 1985; D.T. born March 9, 1990; and, S.L.B. born February 5,

1993.[1] Mother is a deaf mute who began receiving services from the Division of Family Services (DFS) in 1986 for housing and utilities problems, transportation assistance, and medical services. DFS received several hotline calls alleging unsanitary living conditions, lack of supervision, and lack of food report. As a result, DFS requested a psychological evaluation of Mother and the children. The evaluation was performed by Dr. Powell in the summer of 1992. It revealed Mother had "an adjustment disorder with mixed emotional features, dependent personality disorder, and her psychosocial structures were rated as extreme." Mother was admitted for psychiatric care numerous times: October 15, 1993, for major affective disorder, recurrent depressional to psychotic features; December 11, 1993, for organic affective syndrome with mild mental retardation, schizo affective disorder, and passive aggressive personality disorder; January 25, 1994 for psychosis.

Since Mother was deaf and could not speak, caseworkers at DFS communicated with her by sign-language and written notes. She was provided with noise-activated or alarm devices specifically designed for the deaf.

On September 17, 1992, D.B and D.T. were removed from the home because of allegations that S.A., Mother's boyfriend, severely beat D.B. There were also allegations of sexual abuse to the two children. S.A. later pled guilty to physically abusing D.B. However, no criminal charges were filed against Mother. Subsequently, when S.L.B. was born, DFS immediately took the infant into protective custody based on prior allegations of sexual and physical abuse.

On November 15, 1993, the court took jurisdiction over the three children. It appointed a guardian ad litem for Mother on September 2, 1994. At the termination hearing, a DFS caseworker, two DFS investigators, a family preservation specialist, and an assistant prosecutor testified in support of the petition. Mother testified and submitted the deposition of Dr. Lindbergh S. Sata, a psychiatrist. He opined Mother's mental condition was reversible, however, a three to six month extensive therapy was necessary.

The trial court terminated Mother's parental rights on January 3, 1995, and found the following: (1) Mother failed to exercise care when the children were subjected to physical and sexual abuse; (2) Mother knew or should have known of the physical and sexual abuse by Mother's boyfriend; (3) Mother suffered from a mental condition which impaired her ability to provide adequate parenting care; (4) numerous substantiated instances of neglect and abuse occurred over the years and Mother failed to provide proper care to her children; (5) Mother received extensive services from DFS, but to no avail; and, (6) the best interest of the children would be served if Mother's parental rights were severed. This appeal followed.

■■■ We review the trial court's decision in accordance with *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Parental rights may be terminated if it is in the best interest of the child and the trial court finds clear, cogent, and convincing evidence that supports one or more of the grounds set out in § 211.447 RSMo1994. *In Interest of B.L.B.*, 834 S.W.2d 795, 799 (Mo.App.E.D. 1992). The facts and reasonable inferences are considered in the light most favorable to the judgment. *In the Interest of M.H.*, 859 S.W.2d 888, 892 (Mo.App.S.D.1993). The trial court determines the credibility of witnesses. *In Interest of M.S.*, 830 S.W.2d 540, 543 (Mo.App.W.D.1992).

Mother raises three points on appeal. She first contends the trial court failed to provide her with a guardian ad litem in a timely manner.

Whenever it shall be suggested or affirmatively appear to the court that any person not having a duly appointed guardian is incapable by reason of mental or physical infirmity of instituting suit or of properly caring for the person's own interest in any litigation brought by or against such person, the court shall inquire into the

1. Daniel T. is the natural father of D.B. and D.T. S.A. is the natural father of S.L.B. Neither father participated in this appeal.

person's mental or physical condition.... Rule 52.02(k).

Mother relies on *In re M*, 393 S.W.2d 109 (Mo.App.1965). However, this case is distinguishable from the case at bar. *In re M* involved a father who was described as mentally incompetent in the juvenile officer's petition and numerous reports submitted by the state. *Id.* at 110, 115. The Southern District court held the father was entitled to a guardian ad litem since his rights were not being properly represented or protected. *Id.* at 117.

■ Here, Mother's competency was not an issue raised by Mother or her attorney until August 1994. Mother's attorney suggested an appointment for guardian ad litem August 19, 1994. The court quickly honored the request. It appointed a guardian ad litem for Mother on September 2, 1994. Before August 1994, the court appointed counsel for Mother on three separate occasions: October 1, 1992, February 23, 1993, and June 9, 1993. The record is silent on Mother's ability to comprehend and communicate with her attorney. The person appointed as Mother's attorney became her guardian ad litem. Mother was represented at the time the juvenile officer filed his petition to terminate her parental rights. She was also represented by counsel at the jurisdictional hearing and the termination proceeding. Although Mother was hospitalized, diagnosed and treated for her mental problems, this does not constitute an adjudication or a declaration that she is legally *non compos mentis*. We find the trial court provided Mother with a guardian ad litem in a timely manner.

■ Next, Mother contends the trial court erroneously considered her mental condition when it terminated her parental rights. She relies heavily on the deposition of Dr. Sata. Mother failed to provide this court with a copy of the deposition, although portions of it were read into evidence. Dr. Sata opined Mother had psychosis, and therefore was unable to care for her children because of the disease. He believed the psychosis could be remedied through active psychiatric treatment within three to six months.

The juvenile officer also presented, without objection, evidence that Mother had mental problems. She suffered from various psychological conditions including psychosis, major affective disorder, organic affective syndrome, passive-aggressive personality disorder, schizo-affective disorder, depression, and mild retardation. Dr. Powell rated her mental disorders as "extreme".

■ Under § 211.447.2(2)(a) RSMo1994, a court may consider a parent's mental condition if it would affect the parent's ability to care for the child. *In Interest of M.S.*, 830 S.W.2d at 544. The trial court found Dr. Powell's evaluation credible. The trial court did not err in considering Mother's mental condition as a factor in terminating her parental rights.

The trial court terminated Mother's parental rights on other grounds. It found the children were subjected to repeated neglect and abuse, and Mother failed to exercise care over the children. A DFS caseworker testified that "eight or nine" abuse and neglect investigations were performed on the family:

> There was an educational neglect, lack of supervision; one lack of supervision was because [D.T.] was severely burned. One was because [D.B.] was out of control. There was the one where—involving [Mother's father-in-law] in '86. There was a sexual abuse by Mom, sexual abuse by [S.A.], physical abuse by [S.A.]. And she left her children one time, and that was rejection by indifference.

■ We find Mother knew or should have known her son was sexually and physically abused by S.A. Mother admitted she fought with S.A. several times because she suspected he sexually and physically abused D.B. and D.T. Despite her suspicions, Mother continued to live with S.A. and eventually married him in February 1993. An investigator testified Mother wrote and signed a note indicating she was aware of the abuse by S.A. The investigator also testified D.B. made a statement that Mother saw the sexual abuse, but failed to do anything and may have participated in the sexual acts on at least one occasion.

A mother has an affirmative duty to protect her child and report an abuser. *In Interest of R.A.M.*, 755 S.W.2d 431, 435 (Mo. App.1988). Besides her mental condition, there was substantial evidence of abuse and neglect by Mother sufficient to terminate her parental rights.

Last, Mother claims the services provided by DFS were incomplete and failed to provide her with a written service reunification plan.

During the termination hearing, a DFS caseworker testified DFS became involved with Mother and her children in 1986 and helped her with housing, utilities, transportation, and doctor visits. At one point, Mother's attorney interjected and stipulated to the services DFS provided:

> Your Honor, for the purpose of moving this along, I think the natural mother would be more than willing to stipulate to the facts that the Division of Family Services has provided services to her in the past. And they're certainly aware of the help that she needed. I think that we can move right into the issues that came up to this—to this hearing rather than going over all these things from the past.

DFS provided numerous services to Mother since 1986. It provided her with alarming devices for the deaf and arranged for psychological evaluations for her and her children. DFS, through The Association for Retarded Citizens, addressed issues of parenting, provided day-care services for D.T., and camp for D.B. Mother participated in family preservation services designed to keep the children in the home and educate her on parenting skills. DFS provided visitation with the children. The services provided by DFS were more than adequate.

Even if there was some merit to Mother's complaint, absence of treatment or services is no defense to a termination proceeding. *In re Interest of A.L.B.*, 743 S.W.2d 875, 881 (Mo.App.1987). Moreover, a social service plan is no longer mandatory. Nor will its absence require a reversal. *In Inter-*

*est of J.K.C.*, 841 S.W.2d 198, 202 (Mo.App. W.D.1992) *(rev'd on other grounds).*

We affirm.

REINHARD, P.J., and CRANDALL, J., concur.