**In the Interest of G.M.T., a minor.**

No. 72152.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 20, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 24, 1998.

Application for Transfer Denied
May 26, 1998.

Michael A. Gross & Cynthia A. Sciuto, St. Louis, for appellant.

Timothy B. Brassil, St. Louis, for respondent.

KAROHL, Judge.

J.H. (Mother) and K.H. (Father), the natural parents of G.M.T., appeal the trial court's judgments which terminated their parental rights and transferred custody of G.M.T., their child, to Donald and Christine Taber (the Tabers).

Mother and Father began living together in 1995, in a home owned by Father. He has stable long-term employment. Mother became pregnant in April, 1995, after living with Father for approximately one month. Her child from a previous relationship resided with the couple. Father also had a child from a previous relationship, but his child lived with the mother. Father supported and visited his child frequently. In the summer of 1995, problems developed in the couple's relationship. In August, Mother moved out of Father's home without notice to him, without telling him her whereabouts, and with the intention of not being found by him. Mother discussed placing the unborn infant with her aunt, Charmaine Bonney. Mrs. Bonney disapproved of Mother's suggestion, and as an alternative, offered to care for the infant until Mother could support the child.

Mother refused the offer. She approached the Tabers, her uncle and his wife, and suggested that they adopt her unborn child. They agreed to the adoption after Mother told them she and the father, whose identity was disclosed, would consent. Both of Mother's parents and Mrs. Bonney discouraged her from going through with the adoption.

Father was not consulted. He was unaware of the arrangement and never consented to it. After Mother left Father, he made several futile attempts to contact her. On numerous occasions, Father went by her mother's house, knocked on the door, but no one ever answered. He also looked for Mother at Mrs. Bonney's residence. Instead of knocking on the door, he drove by and honked his horn hoping to catch her attention if she resided there. He continued to live in his home and work at the same place of employment. She was not employed.

When G.M.T. was born on January 27, 1996, the Tabers were present at the birth. Mother agreed to give the newborn the last name of Taber on the birth certificate. The day after G.M.T.'s birth, she gave the Tabers physical custody of the child. They knew the identity of Father and that they were acting without his knowledge or consent. The Tabers have cared for the child and provided her sole monetary support since birth. The court found Mother had infrequent visitation with the child, at least two visits.

Mother and Father did not communicate with one another from August, 1995, until June, 1996. In late June, 1996, by chance, Father learned where he could find Mother from a fellow employee. He promptly contacted her. They have been living together ever since. On July 2, 1996, Mother went to the Taber's residence with her father, the adoptive father's brother. She requested custody of G.M.T. The Tabers retained custody, and on July 9, 1996, they filed a three-count petition for termination of parental rights, transfer of custody, and adoption. The trial court terminated parental rights and placed the child with the Tabers. The adoption request is pending.

■ Our first concern is whether the judgment regarding termination of parental rights is final and appealable. A termination of parental rights under section 211.447.2(1)

RSMo 1994,[1] is final and appealable. Section 211.477.5; *In re Adoption of D_R_E_,* 696 S.W.2d 882, 883 (Mo.App.1985). Petitioners rely on section 453.040(1) as authority for the termination. Termination on that ground is authorized by section 211.447.2(1). Therefore, the judgment terminating parental rights is a final judgment for purposes of appeal. We are aware of the holding of the Southern District of this court which held a transfer of custody judgment, after termination, is not appealable until the adoption count is decided. *J.E.S. v. D.L.S.,* 921 S.W.2d 636, 637 (Mo.App. S.D.1996). However, in that case the termination judgment was not appealed. Thus, the legal effect of the finality of a termination judgment before a decision on an adoption count was not considered. In *In the Interest of D.S.G.,* 947 S.W.2d 516 (Mo.App. E.D.1997), we considered this issue and determined termination of parental rights was appealable while an adoption was pending. *Id.* at 518.

■ We review the decision of the trial court in accordance with Rule 73.01(c) as interpreted in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In a court tried case where parental rights have been terminated, the trial court's decree will be sustained if it is in the best interest of the child and if the termination is supported by clear, cogent, and convincing evidence. *In the Interest of D.B. v. L.B.A.,* 916 S.W.2d 430, 432 (Mo.App. E.D.1996). The facts and reasonable inferences therefrom are reviewed in the light most favorable to the trial court's judgment with due regard given to the trial court's determination of witness credibility. *In the Interest of D.B.,* 916 S.W.2d at 432.

Mother and Father offer two points on appeal. First, they argue the trial court erred in terminating Mother's parental rights because: (a) there was no clear, cogent, and convincing evidence to support the termination; (b) to the extent prior abandonment was proven, the evidence showed the abandonment was terminated by repentance; and, (c) the trial court improperly considered her lifestyle and G.M.T.'s best interest in its determination of abandonment. For their second point, Mother and Father assert the court erred in terminating Father's parental rights and transferring custody in that insufficient evidence was presented to the court to support a finding he abandoned G.M.T.

■ In a case for termination of parental rights based only on the ground of abandonment under sections 453.040(1) and 211.447.2(1)(b), two conditions must be shown. It must be proven that the parent, without good cause, left the child: (1) without any provision for parental support; and, (2) without making any arrangements to visit or communicate with the child, although able to do so. Section 211.447.2(1)(b). Abandonment focuses on the parent's intent taking into consideration all evidence of the parent's conduct, including conduct before and after the statutory period. *In Interest of C.S.,* 910 S.W.2d·811, 813 (Mo.App. E.D.1995).

Mother originated the idea of giving G.M.T. to the Tabers for an adoption which would be accomplished by the consent of both parents. Clearly she intended to give up the unborn child. Even though close family members discouraged this idea, she carried it out. She voluntarily agreed to place the child with the Tabers the day after she gave birth. She allowed "Taber" to be noted as the child's last name on the birth certificate. If these were the only relevant facts they would support a finding that Mother willfully relinquished custody of the child with the intention that the severance be permanent. *C.B.L. v. K.E.L.,* 937 S.W.2d 734, 737 (Mo.App. E.D.1996). However, it is undisputed that the agreement between Mother and the Tabers contained a provision that both parents would consent to an eventual adoption by the Tabers. Mr. Taber testified he relied on Mother's assurance of Father's consent. He considered her assurance to be the "consent of father." It is also undisputed the Tabers could have contacted Father, but made no effort to do so.

The terms of Mother's agreement with the Tabers are relevant to the matters of good cause and provision for support. The parties to the agreement do not disagree Mother had good cause for the agreement and that the agreement provided full support. Further, there was no intent or provision for Mother abandoning her child if Father did not consent to the Taber adoption.

**1.** All statutory references are to RSMo 1994 un-
less otherwise noted.

There was no evidence to support a finding Father knew or could have known of a live birth, when or where it occurred, and where Mother could be found. Obviously, he was not part of the agreement. He never consented to the placement of G.M.T. with the Tabers, or an eventual adoption. On the issue of abandonment, there must be clear, cogent, and convincing evidence that Father abandoned G.M.T.

To prove abandonment, there must be evidence which shows accessibility of the child for the purposes of visitation and communication. *In Interest of Baby Girl W,* 728 S.W.2d 545, 547 (Mo.App.1987). Father cannot be subjected to a termination of parental rights for failure to assert his parental rights by acts or omissions prior to June, 1996, unless he had knowledge of the birth and Mother's or G.M.T.'s location. Here: (1) Mother concealed from him her whereabouts and the proposed adoption; (2) the adoptive parents knew Father's identity, and whereabouts, but never contacted him to obtain consent for custody or adoption; and (3) no evidence was presented which would support a finding Father could have discovered the child's whereabouts or the planned adoption. There was no evidence to support a finding the child was accessible to Father. The Tabers' conduct contributed to prevent him from affirmatively learning he had a child or informing him he could have parental access to his child. There was no evidence to support a finding of any breach of duty by Father.

Abandonment is not compatible with a case where custody has been taken from the parent involuntarily. *See, In the Interest of D_ L_ C_ v. Nelson,* 834 S.W.2d 760, 770 (Mo. App. S.D.1992). The agreement of Mother and the Tabers had that effect. Father did not have actual knowledge of his child's existence until June, 1996. Immediately after his discovery of Mother's location, he found her and expressed his disapproval of the adoption and his desire to care for his daughter. The evidence does not support a finding of any contrary intent on the part of Father to abandon G.M.T. Since the time Father affirmatively learned of G.M.T.'s existence, his actions have exhibited an intent to exert his parental rights and perform his parental duties. We find there was no evidence to support a finding that Father abandoned the child.

The court erred in terminating Father's parental rights. As a result, it also erred in terminating Mother's rights. The agreement Mother made with the Tabers was conditional on obtaining the consent of Father. The significance of the condition becomes evident with a finding Father did not abandon his child. Mother did not contract with the Tabers to give up her parental rights in favor of Father if the Tabers could not legally overcome Father's refusal to consent to the termination of his parental rights. That possibility illuminates the importance of the provision requiring Father's consent. Without satisfying that condition, neither the Tabers nor Mother legally could be forced to accept termination and, subsequently, an adoption.

We reverse and remand.

AHRENS, P.J., and CRANDALL, J., concur.